H. E. BRADEN, RESPONDENT, v. FRIEDRICHSEN FLOOR AND WALL TILE
COMPANY, APPELLANT.

Kansas City Court of Appeals.   March 4, 1929.

*Mosman, Rogers & Buzard* for appellant.

*Trusty & Pugh* and *Burrus & Burrus* for respondent.

BARNETT, C.—This is an action for personal injuries received by plaintiff while working as a laborer in defendant's clay tile factory. Plaintiff obtained a judgment for $7000 and defendant has appealed. Plaintiff had been working in defendant's plant for about seven or eight months. White clay was baked and then brought into the room where plaintiff worked and run through a crusher. It was then dampened and put through a grinder and this pulverized. For the purpose of dampening the clay a layer of the crushed clay was spread upon the floor and sprinkled with a hose. A clay bin about ten or twelve feet long sat upon the floor, and back of the clay bin there was a ladder which stood in a perpendicular position

and which led to a platform above, upon which the grinder stood. This grinder would become choked with clay and it was necessary for the plaintiff to climb up the ladder to open up or "unchoke" the grinder, and then return by the ladder to the first floor. Plaintiff testified that when the dry clay was brought in it would cause clay dust to settle upon the various objects in the room, and in sprinkling the clay, both the clay and the dust would get wet and he would thereby get the wet clay upon his feet, and the clay would come off of his feet upon the rungs of the ladder. He testified that he used this ladder from six to fifteen times a day. He testified that the ladder was "toe-nailed" to the shelf upon which the grinder stood, and was fixed by a cleat or brace above the shelf, one end of which was nailed to the side of the ladder and the other end of which was nailed to some fixture in the building. Another cleat or brace had been upon the ladder but it had come off and the nails which held the ladder had worked loose. There had been a brace nailed to the bottom of the ladder, which pushed against the wall and thus kept the ladder in a vertical position, but this had also come off. The bottom of the ladder stood out from the wall, because the shelf upon which the grinder stood projected out from the wall. The plaintiff testified that the rungs of the ladder had become worn, and, because of the insecurity of the ladder, the bottom of the ladder would push in toward the wall when he was upon it, and that it was loose and shaky. The plaintiff testified that he had told his foreman about the condition of the ladder a number of times; that in the month of April, 1924, the foreman had promised to repair the ladder, but had not done so. Plaintiff was hurt in June. About two weeks before plaintiff's injury plaintiff again complained to the foreman about the condition of the ladder, but he does not state whether the foreman at that time promised to make any repairs. The plaintiff fully understood that the ladder was dangerous. He testified that the ladder became looser and more shaky all the time, and in April he told the foreman that he or somebody was likely to fall and get hurt. He stated that he knew it was dangerous; that it was getting looser all the time, and nothing was done about fixing the ladder. Plaintiff made no effort to fix the ladder himself, but explains this by stating that he did not have any nails or tools to fix it, and when he told his foreman about the condition of the ladder the foreman did not furnish him with any tools or nails. On or about the 9th day of June, 1924, plaintiff was descending the ladder after attending to his duties upon the shelf. One of his feet slipped, and he fell and thereby sustained injuries.

There is much contradictory evidence in the record, but we have not set it out as we have nothing to do with the weight of the evidence. It was proved that the plaintiff in a deposition, and in his

testimony upon a former trial, gave testimony which in certain respects contradicted his testimony at the trial from which this appeal is taken. It also appears from the bill of exceptions that the plaintiff, over the objection of defendant, testified that a superior agent of defendant, after the injury, sent him to the Travelers Insurance Company in Kansas City; that he went to the insurance company and talked to someone at the company's office and someone in the insurance office had him sign something which he did not read. Defendant's attorney then moved that the jury be discharged for the reason that the testimony was "only for the purpose of settlement if he signed the statement, and because it is prejudicial. It is prejudice of the worst kind and I move to discharge the jury." The jury was then excused and the court called upon plaintiff's attorney to give his reason for asking such questions. The attorney stated that in the former trial defendant's attorney had developed the fact that plaintiff had signed a statement for the Travelers Insurance Company, and the agent who took the statement had been put upon the stand and plaintiff claimed that the statement was a fraud. The defendant had not offered any such statement in evidence. The defendant's attorney again moved the court to discharge the jury because the plaintiff had gone into the matter for the sole purpose of showing that some negotiations for settlement had been made, and that the testimony was offered to give the jury an idea that after defendant had taken the statement, it had found out that there was some liability. The court then overruled the motion to discharge the jury and exceptions were properly saved. Plaintiff never did tell what was said in the insurance office. Before the jury was examined on the *voir dire* the plaintiff's counsel, in the absence of the jury, and over the objections of defendant, asked defendant's attorney whether or not defendant carried liability insurance, covering the injury in question, with the Travelers Insurance Company; and defendant's attorney stated that it did. Plaintiff's attorney then asked if the insurance company had an office in Kansas City and how many men and women were there employed. The answer was about forty or fifty. Then, in the presence of the jury, plaintiff's attorney asked the members of the jury whether anyone of the jurors was now, or had ever been employed by the Travelers Insurance Company, whether anyone of them owned, or had owned, any stock or bonds or been financially interested in the Travelers Insurance Company and whether anyone of the jurors had any relatives employed by the Travelers Insurance Company. Defendant's attorney asked the jurors whether, if it was shown that there was any matter of insurance in the case, that would effect the verdict.

## OPINION.

Appellant contends that a demurrer to the evidence should have been sustained for the reason that plaintiff's injury was due to conditions which were incidental to his work and which he himself created; because he merely slipped from a ladder, and his fall was not shown to have been the result of the negligence alleged. We do not agree with this contention. We do not think that the fact that an upright ladder was installed for the use of plaintiff and the other employees in going to the overhead shelf was of itself any evidence of negligence. Neither do we think that negligence was shown by the fact that the steps of the ladder were made slick by the wet clay upon the feet of plaintiff and, perhaps, of other employees, nor by the fact that some of the steps of the ladder were more or less worn. There is no contention that the steps of the ladder were worn to the place where they were likely to break. It would be unreasonable to require an employer to throw away a ladder and install a new one so soon as it began to show evidence of wear. There is no evidence that it was unusual for upright ladders to be installed in manufacturing plants. On the other hand, common observation teaches that the installation of such a ladder is by no means uncommon. It was not incumbent upon defendant to install means of ascent and descent which will secure the utmost possible safety. He performs his duty when he adopts the means which are in general use, if such means be reasonably safe. [Beckman v. Anheuser-Busch, 98 Mo. App. 555; Blundell v. Mfg. Co., 189 Mo. 552; Courter v. Mercantile Co., 136 Mo. App. 517.]

There was no evidence that the work could have been prosecuted without getting wet clay upon the feet of the employees and upon the rungs of the ladder. The plaintiff testified that he could not keep from getting wet clay upon his feet and upon the ladder. This was a risk which he assumed, as it was incidental to his employment.

However, there is evidence that the ladder was secured merely by nailing it to the overhead shelf and by putting one brace above the shelf. It was not fastened at the bottom. As a result, the weight of a man's body, as he stepped upon the ladder, would push the lower end toward the wall, so that the ladder would give and the man using the ladder had to lean backward climbing up and down. We think that the jury could properly determine from this evidence that the ladder was not reasonably safe for use by men whose feet would naturally be covered with wet clay, and that it was because of this condition that plaintiff's foot slipped. A man's foot would be much more likely to slip from a ladder that leaned away from him and swayed at the bottom. If a man with wet clay upon his feet, while climbing a ladder, should attempt to bear his weight upon the rungs,

the ladder would be much more likely to give and slip from under his foot if it were not securely fastened at the bottom.

It is contended by appellant that the master may properly delegate to the servant the duty of making simple repairs which take but a small amount of labor and which are well within his skill and the means at hand. This is undoubtedly the law. It is also the law that the duty devolves upon the servant to exercise ordinary care for his own safety by making such minor repairs, even though there is no express contract that such duties are to be performed by the servant. Respondent meets this contention by claiming that when the master made a promise to repair, this relieved the servant of any duty in the matter; and by the further claim that the evidence showed that the servant was not furnished with any tools or nails wherewith to make the repair.

The plaintiff cannot rely upon the promise of repair disclosed by this record. It is true that if the danger becomes apparent to the servant and he complains to the master, and the master promises to repair the defect or remove the danger, then the servant may rely upon the promise for such a period of time as would be reasonable to allow the master for its performance. But after such time has elapsed as would preclude all reasonable expectation that the promise would be kept, the servant can no longer rely upon the promise. [Coin v. Lounge Co., 222 Mo. 488, l. c. 510; Buckner v. Horse & Mule Co., 221 Mo. 701; Halloran v. Union Iron & Foundry Co., 133 Mo. 471, l. c. 479; Bliesner v. Distilling Co., 174 Mo. App. 139; Nash v. Dowling & Cavanaugh, 93 Mo. App. 156; Conroy v. Vulcan Iron Works, 62 Mo. 35; 6 Mo. App. 102; Stalzer v. Dold Parking Co., 84 Mo. App. 565, l. c. 576; Hannon v. Central Coal & Coke Co., 156 Mo. 232; Meyer v. Gundlach-Nelson Mfg. Co., 67 Mo. App. 389.]

In this case the plaintiff continued to work from April, when the promise was made, until the 9th of the following June. A period of three weeks has been held to be an unreasonable time to rely upon such a promise where more time would have been required to remedy the danger than in the case before us. [Graves v. Metropolitan Street Railway Co., 175 Mo. App. 337, l. c. 343.]

The evidence that plaintiff was not furnished with tools or nails with which to make the repair takes this case out of the rule that the master may rely upon the servant to make such minor repairs as are within his skill and the means at hand and which are necessary for his safety. If no nails or tools were at hand, then the jury could well find that plaintiff was not guilty of negligence in failing to leave the plant to go in search of material, for it was his duty to be in constant attendance upon the clay grinder which was operated by defendant.

Appellant contends that plaintiff was guilty of contributory negligence as a matter of law. If the evidence most favorable to plaintiff had disclosed the fact that plaintiff had the means at hand wherewith to make the repair, we would unhesitatingly declare that he was guilty of such negligence as would bar a recovery. The repair was very simple and could have been accomplished in a few moments. It was only necessary to nail one or two additional braces to the ladder, or to nail a board to the bottom of the ladder which would prevent it from swinging in toward the wall. However, if plaintiff was prevented from making such repairs by the absence of the necessary materials, then he had to use the ladder as it was or abandon his employment. We do not think that the use of the ladder was so imminently dangerous but what the jury could well find that a reasonably prudent man would have attempted to use the ladder as it was rather than abandon his employment.

Appellant contends that plaintiff's case should not be determined solely upon the testimony at the trial from which this appeal was taken, but that he is bound by his testimony given at another trial and under a deposition, which testimony was at variance with his testimony at the trial, because the contradictions were unexplained and unexcused, citing in support thereof the case of Monroe v. Chicago & Alton T. Co., 249 S. W. 644. That case holds that where it is shown that plaintiff's testimony on a former trial is contradictory to his testimony given at a subsequent trial, and the conflicts are unexplained, his testimony on one or the other occasion is obviously false, and, therefore his testimony is of no probative value in the subsequent trial. However, in the later cases of Davidson v. Railroad, 256 S. W. 169, and Steele v. K. C., 257 S. W. 756, the Supreme Court has expressed a different view. In those cases the court held that although it was obvious that the plaintiff had altered his testimony at the second trial, yet it was for the jury to determine what credence should be given to his testimony before them as impeached by what was said at the previous hearing. We therefore hold that we cannot determine whether plaintiff made a prima-facie case by considering his testimony on previous occasions, even though he offered no explanation of the contradictions.

Appellant assigns as error the action of the trial court in permitting plaintiff to introduce evidence showing that defendant was protected by liability insurance, and showing plaintiff's dealings with the insurance company. There is no assignment in this court that the trial court erred in permitting plaintiff's attorney to examine the jury on its *voir dire* concerning the insurance company. Neither was there any objection at the trial to the examination of the plaintiff upon the ground that the name of the insurance company was injected into the case. The manner in which the examination of the

jury was conducted has been approved by the Supreme Court. [Cazzell v. Schofield, 8 S. W. (2d) 580.] At the trial the only objection made to the testimony wherein the name of the insurance company was mentioned was that this was evidence of an attempted settlement, and that the testimony was offered to show that defendant, after making an investigation, had determined that there was some liability. That objection is waived here, and the objection made here was waived at the trial.

Appellant's assertion that it was error to admit the evidence of one of plaintiff's witnesses concerning the condition of the ladder before the time when plaintiff went to work is not well founded. The only objection of this nature which was made at the trial was sustained by the court. Other objections were made and overruled, but they are not presented by this assignment.

Plaintiff's instruction No. 1 is under attack. It begins with the following statement:

"It was the duty of the defendant, Friderichsen Floor and Wall Tile Company, to exercise ordinary care to furnish the plaintiff a reasonably safe way of getting up to and down from the place where he was required by the defendant to do his work, and to exercise ordinary care to keep such way in a reasonably safe condition, and so if you find from the evidence etc."

Then follows an outline of the essential facts necessary to support a verdict for plaintiff, and a direction to find a verdict for plaintiff based upon such finding. This instruction required the jury to find that the ladder leaned; that it was shaky; that the foot rests of the ladder were slick or slippery; that by reason of such facts, "if such be the facts," that the ladder was not reasonably safe, and that a person using the same was likely to slip and fall and be injured; and that the defendant's foreman, over the plaintiff, knew, or by the exercise of ordinary care could have known of such facts, and that he directed the plaintiff to use the ladder and assured him that it was reasonably safe. It required the jury to find that because of such facts defendant failed to exercise such care as ordinarily careful and prudent persons would ordinarily exercise under the same or similar circumstances and that such failure of defendant, "if you find it did so fail" directly caused the plaintiff to slip and fall from the ladder and to be injured; and that the plaintiff was exercising ordinary care for his own safety. It is contended that by this instruction the jury was permitted to find defendant guilty of negligence if it failed to provide a safe way, whereas the jury should have been directed to consider only whether the particular ladder was reasonably safe; that the instruction permits the jury to find defendant liable if the foot rests were slick and slippery, whereas, they should have been directed to consider this only in connection with the

allegation that the ladder was loose and shaky; that the instruction does not require the jury to find that the plaintiff relied upon any assurance of safety, but assumes that he did rely upon such assurance, and that he had the right to rely upon such assurance; that the instruction does not require the jury to find that the assurance, if any, was negligently given. It is not good practice to give an instruction which merely declares an abstract principle of law. This instruction includes a prelude to the requirements that the jury find specific issues in favor of plaintiff, which merely lays down the abstract proposition that it is the duty of defendant to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work, and to exercise ordinary care to keep such place in a reasonably safe condition. The vice of such an instruction is that it does not confine the jury to the specific allegations of the petition in determining whether or not defendant exercised ordinary care. However, this same instruction required the jury to find everything that was necessary to return a verdict. In view of this fact the abstract declaration of law could not have misled the jury. [Drew v. St. Louis, etc., R. Co., 293 S. W. 468.] The instruction not only required the jury to find that the foot rests of the ladder were slick and slippery, but also required a finding that the ladder would lean and that it was shaky and that by reason of all of such facts the ladder was not reasonably safe and that a person using the same was likely to slip and fall. It is true that the instruction did not require the jury to find that plaintiff relied upon any assurance of safety nor that such assurance was negligently given. The plaintiff was not entitled to rely upon the assurance of safety, and a finding upon this question was properly withheld from the jury. We see nothing in this instruction which justifies the statement that it assumes that plaintiff relied or had the right to rely upon the assurance of the foreman.

This instruction is not in conflict with defendant's instruction No. 8, which is upon the issue of contributory negligence. Plaintiff's main instruction requires the jury to find that plaintiff was exercising ordinary care for his own safety. Defendant's instruction No. 8 tells the jury that if plaintiff knew the ladder was not reasonably safe, and that the use thereof was likely to and probably would result in an injury, and that a reasonably careful man, exercising ordinary care, would not have used the ladder under these conditions, then plaintiff could not recover. In this the instructions are entirely consistent. Furthermore, it is not error for plaintiff's main instruction which directs a verdict to omit the essential elements of contributory negligence if those elements are properly submitted by any other instruction. The plea of contributory negligence is an

affirmative defense, and in this State it is sufficient if an affirmative defense be submitted by any instruction.

There is no conflict between plaintiff's instruction No. 3 and defendant's instruction No. 8, both of which submit the question of contributory negligence. The statement that there is a conflict between an instruction for plaintiff and an instruction for defendant is an insufficient assignment of error. The question to be determined is whether or not the respondent's instruction is erroneous. If appellant claims it is, it is his duty to point out the error. We are not concerned with the correctness or incorrectness of appellant's instruction.

Appellant complains that the court erred in giving plaintiff's instruction No. 4 because it is not based upon any allegation of the petition, but introduces a new theory into the case and thus broadens the issue. That instruction told the jury that if they found for plaintiff and found from the evidence that at and prior to the time plaintiff claims to have fallen from the ladder he had any disease or physical disabilities, and that such prior disease or disabilities were aggravated or made worse by the fall from the ladder, then defendant is liable to the plaintiff for all such aggravation of such prior injury or condition. The defendant brought out, on cross-examination of the plaintiff, that he had been injured before, and contended that his physical condition was not entirely due to the fall from the ladder. The defendant undoubtedly had a right to show, if it could, that the plaintiff's condition was not wholly attributable to the fall, and it was proper for the court to direct the jury how the damages should be ascertained if they should find for defendant upon that issue. The issue was injected into the case by the defendant and not by the plaintiff. The cases cited by appellant are cases where plaintiff alleged one act of negligence but submitted another to the jury, or pleaded one set of facts in avoidance of a contract and proved another. They are not in point.

It is alleged that the trial court committed error in refusing to give defendant's instruction No. 4 which reads as follows:

"The court instructs the jury that you cannot find the defendant guilty of any negligence by reason of the claim that the plaintiff reported the condition of the ladder to defendant's foreman and that said foreman directed plaintiff to continue the use of the same and assured him that he would remedy its condition and that plaintiff could use it with reasonable safety and plaintiff relied upon such assurance and this charge of negligence is withdrawn from your consideration."

We agree that the jury had no right to base a finding of negligence upon the promise of the defendant that he would remedy the condition of the ladder. However, the instruction also attempts

to withdraw from the consideration of the jury all evidence that the foreman directed the plaintiff to continue the use of the ladder. The jury had a right to consider such evidence in determining whether or not plaintiff exercised ordinary care. The employee is not guilty of contributory negligence as a matter of law if he obey the order to use a defective appliance, unless the danger is so imminent and obvious that a reasonably prudent person would not have obeyed the order. [Brann v. Hydraulic Press Brick Plant, 288 S. W. 941; Struckel v. Busch Sulzer Bros., 300 S. W. 993.] Defendant's instruction No. 4 sought to withdraw from the jury an element which the jury had a right to consider.

Complaint is made that the court modified defendant's instruction No. 11. That instruction, as offered, is as follows:

"The court instructs the jury that the charge made by the plaintiff against the defendant is one of negligence and that negligence is a positive wrong and therefore, is not to be presumed in this case. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury, that the charge is true as made, and it does not devolve upon the defendant to disprove the charge, but, rather, the law casts the burden of proof in this respect upon the plaintiff and such charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury, as above stated. If, therefore, you find the evidence touching the charge of negligence, evenly balanced (*or that the truth as to the charge of negligence against the defendant remains in doubt in your minds*), after fairly considering the evidence, your verdict must be for the defendant." (Italics ours.)

The court struck out the language near the end of the instruction which reads as follows: "*or that the truth as to the charge of negligence against the defendant remains in doubt in your minds.*" The Supreme Court of Missouri considered this identical instruction and held that it was not error to give it in the form requested by defendant. The Supreme Court said: "The subsequent direction that if 'the truth as to the charge of negligence against defendant remains in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendant' simply states the converse of the 'reasonable satisfaction' previously charged." [Denkman v. Prudential Fixture Co., 289 S. W. 591.] In view of this decision we are compelled to hold that it would have been proper for the court to give the instruction as requested. It does not follow that it was reversible error to refuse the instruction as requested and give it as modified by the court. The instruction as

given by the court very clearly instructed the jury how they should proceed to weigh the evidence upon the question of negligence. They were told that the charge must be sustained by the preponderance or the greater weight of the evidence to the reasonable satisfaction of the jury; that the burden of proof was upon the plaintiff; that if they found the evidence touching the charge of negligence evenly balanced they must find for the defendant. If the jury followed the instruction as given, they weighed the evidence correctly. The court is not bound to adopt the language of an attorney in instructing the jury. It is sufficient if he correctly instructs the jury upon all the issues concerning which any instruction has been asked. It very often happens that two instructions upon one issue are given to the jury. If both are correct the judgment will not be reversed upon the ground that it was not necessary to give both instructions. Upon the other hand, if two such instructions are asked and one only is given, the judgment will not be reversed if the issue is properly presented by the given instruction.

Appellant contends that the court erred in refusing to give defendant's instruction No. 17 as requested. It was as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was caused to fall—if you find he did fall, solely because of his foot slipping, if so, because of any condition of or effect from clay, *either* upon his shoes *or upon the rounds of the ladder,* then you are instructed that plaintiff cannot recover in this case and your verdict will be for the defendant." (Italics ours.)

The court struck out the words which we have italicized and gave the instruction as modified. By so doing the court instructed the jury that if plaintiff was caused to fall solely because of any effect from clay upon his shoes, then plaintiff could not recover, but refused to instruct the jury that if plaintiff was caused to fall solely because of the effect of clay upon the rounds of the ladder, then plaintiff could not recover. Appellant's contention is that if the ladder was slick and slippery merely because of clay upon the ladder then defendant was not liable. Respondent contends that it was proper to refuse the instruction because it was confusing and misleading; that the answer did not allege that plaintiff slipped because of the effect of clay upon the steps, that the evidence showed that the general use of the ladder had made the rungs slick whether they had clay upon them or not; that other people had used the steps and that there was no other way provided. We are of the opinion that the instruction should have been given as requested. Respondent has not pointed out wherein the instruction is confusing or misleading, and we think it is quite plain. The plaintiff's evi-

dence was to the effect that those who worked in the plant would get wet clay upon their shoes and deposit it upon the ladder. If the jury believed from the evidence that the clay which was already upon the ladder made it slick, but that the wet clay upon plaintiff's shoes, if any, at the time he used the ladder, did not increase the risk, they could have found for plaintiff under the modified instruction; but such a verdict would be contrary to law. The fact that wet clay was usually found upon the ladder was due to the method by which the work was done. It was a risk incidental to the employment and was assumed by the plaintiff. Nor would it make any difference if the slick condition of the ladder rungs was due to dry clay dust which had settled upon the ladder. This was also a risk incidental to the employment. Respondent claims that this instruction deals with assumption of risk which was fully covered by defendant's instruction No. 7. We do not agree with this contention. Instruction No. 7 merely tells the jury that if they find and believe from the evidence that plaintiff's injury was the result of the ordinary and usual hazards incident to the work, and that the same were understood and appreciated by the plaintiff, and were open and obvious to a man of ordinary intelligence, then plaintiff could not recover. In addition to this general instruction, the defendant was entitled to have such risks as were assumed by plaintiff as a matter of law withdrawn from the consideration of the jury.

It is contended that the court erred in failing to give defendant's instruction No. 16. This instruction was drawn upon the theory that the master had a right to rely upon the plaintiff to use reasonable and ordinary care for his own safety and to make such ordinary adjustments or changes as might be necessary to obviate danger which he appreciated and of which he had knowledge, and instructed the jury that if they believed from the evidence that plaintiff could, without unnecessary inconvenience to himself, and with slight effort have adjusted or remedied such minor defects and that an ordinarily careful workman, working under such condition would have made such adjustments or remedied such defect, and that plaintiff carelessly and negligently failed to do so, and that by reason of his failure he was injured, then plaintiff could not recover. The principle upon which the instruction is drawn should have been submitted to the jury, but it was not error for the court to refuse the particular instruction because of the awkward and confusing phraseology. As this case must be retried, and it is not likely that the instruction will be offered at the next trial in its present form, we do not think it necessary to analyze the defects in the instruction.

The judgment is reversed and the cause is remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.