JOHN NOLEN, RESPONDENT, v. HALPIN-DWYER CONSTRUCTION COMPANY, APPELLANT.—29 S. W. (2d) 215.

Kansas City Court of Appeals. May 26, 1930.

*Harris & Koontz* for appellant.

*Allan R. Browne* for respondent.

BARNETT, C.—This is a suit for personal injuries. The plaintiff was employed by the defendant in a rock quarry. It was his duty to break up the rock into small pieces, and for this work he used a hammer or sledge, the head of which was flat or rounded on one end and shaped like a hatchet on the other. The flat end was used for the purpose of breaking thin strata of rock, but the sharp end was used for splitting stone which was too thick to be broken otherwise. Plaintiff was an experienced servant and understood the use of the tool in question. The evidence most favorable to the plaintiff indicates that there were a number of these tools kept by the defendant for the use of its servants, but some were already in use and the one he used was the best of those not already in use. The foreman picked out this particular tool, he and the plaintiff looked it over, and they discovered that there were cakes of rust upon it and it showed checks in the hatchet face of the hammer. The foreman said:

"This looks pretty good. It is better than anything we got. It is a little rusty along the side there. It is a good hammer. Go ahead with the rusty hammer and use that, it will be all right."

Plaintiff used the hammer, on the next day the foreman again told him to use it, and on the third day the same order was given and plaintiff asked him if he did not have a better hammer, and the foreman replied, "not yet." While he was using the hatchet edge of the hammer some rust and steel on the hammer flew up and hit plaintiff in the eye causing injury thereto. Whereupon plaintiff looked at the tool and discovered a piece of steel about one-half inch long and one-half inch thick broken out of the face of the hammer.

Plaintiff, in order to prove the extent of his injury, placed one Dr. Beil on the stand who testified that he had examined the plaintiff's eye on the 11th day of October, 1926, and treated him until the 8th day of November of the same year and examined him again on Sep-

tember 21, 1929, shortly before giving his testimony. Plaintiff's attorney then asked:

"Who paid for the other treatments?"

Defendant objected to this on the ground that this was not material and was incompetent. The objection was overruled and the doctor stated that if he remembered right the Maryland Casualty Company paid him, or Halpin-Dwyer, he didn't remember which. Defendant then made the following objection out of the hearing of the jury:

"This is a witness introduced by the plaintiff and put on the stand and hired by the plaintiff and vouched for by the plaintiff and I object to the question and object to the ruling and I ask that the jury be discharged for the reason that the only purpose of it is to get before the jury the fact that the Maryland Casualty Company employed him when they put him on and cannot ride him down."

"The court sustained the objection but refused to discharge the jury. According to the record before us this also happened out of the hearing of the jury. There was a verdict for plaintiff, a motion for new trial was overruled and defendant has appealed.

### OPINION.

Appellant claims that respondent, plaintiff below, had assumed the risk of the danger which resulted in his injury and was guilty of contributory negligence as a matter of law. In this connection he invokes the so-called simple tool doctrine. The respondent claims that in Missouri the simple tool doctrine is but an application of the doctrine that contributory negligence defeats recovery, and calls attention to the fact that the plaintiff, although he used a defective tool, used the best one that was to be had of those not already in use; that the foreman looked at the hammer, mentioned that it was a little rusty along the side, but said it was a good hammer and for plaintiff to use it; that it would be all right. There is a rule observed in Missouri that if a master is possessed of an amount of material or a number of tools, some good and others bad, he may leave the duty of selecting proper material or tools to an experienced servant, and if the servant selects insufficient or defective materials or tools when he need not do so, the master may not be held liable. [Probst v. Heisinger Motor Car Co., 16 S. W. (2d) 1005.] That doctrine is not involved here, because the plaintiff used the best of the tools that was not already in service. In the case of Pelster v. Shamrod Boiler Co., 268 S. W. 890, this court refused to apply the doctrine in a case where plaintiff was injured when a chip of steel flew from a hammer and struck him in his eye. In that case a number of hammers were available, but there was evidence that all of the hammers were worn, battered and had little cracks in them, and that no others were to be found. [See also State ex rel. Malleable

Casting Co. v. Reynolds, 200 S. W. 57.] The evidence most favorable to plaintiff in the instant case is to the effect that he made the best choice he could have made under the circumstances.

The shred of the simple tool doctrine as it remains in Missouri is peculiar, due to the fact that the Missouri courts hold that the servant never assumes the risk growing out of the master's negligence. For all practical purposes the courts might as well say that the defense of assumption of risk does not exist in Missouri, because if the master was not negligent the servant may not recover whether he assumed the risk or not. In Lowe v. Railroad, 265 Mo. 587, our Supreme Court held that while a master is required to use ordinary care to furnish a servant with safe tools and appliances and to keep them in a safe condition for the performance of the labor required, yet the servant is required to use ordinary care for his own safety; that any ordinary pick is a simple tool and that the experienced servant is possessed of all the knowledge that can be acquired in relation to its safety; that it therefore follows that if the master was negligent because he should have apprehended the danger arising from using a dull pick then plaintiff must be chargeable with the same apprehension. This case does not expressly state that the simple tool doctrine is not an application of the doctrine of the assumption of risk, but the reasoning is to the effect that when the master and the experienced servant are on an equal footing because the tool is simple and each fully understands the nature of the instrument, a jury may not find that the master was negligent and the servant was not. In Williams v. Pryor, 200 S. W. 53, 272 Mo. 613, the defendant furnished the plaintiff an old, battered and worn claw bar. The court said:

"We now come to the simple tool doctrine urged by the defendants. As indicated above, this so-called doctrine cannot avail the defendants, except upon one of two theories, i. e.: (1) that it is not negligence upon the part of the master to furnish a tool which is not reasonably safe for the performance of the work, if such is of simple mechanism and not a complicated one, and (2) that the servant assumed the risk of using such tool.

What we have previously said practically disposes of this question. It is negligence for a master to furnish a tool which is not reasonably safe to be used on the work, and we care not what the character of the tool, in so far as the negligence of the master is concerned, because the contract of hiring called for a reasonably safe place wherein to work, and reasonably safe tools with which to work. . . . Going back to the so-called simple tool doctrine, what is there to be found in it? In its last analysis it is nothing more than that of contributory negligence. A servant picks up a hoe, an ax, or a claw bar, and if the defects are open and glaring, and so open and glaring that a

reasonably prudent person would not undertake to use them in the work being done, then the use of the tool would not be the exercise of ordinary care upon his part for his own protection. This failure to use ordinary care is negligence, and if he sues the master for the master's neglect in furnishing an unsafe tool, the master may respond and say the tool was a simple device, and any ordinary person could have seen and known the defects thereof, and in using it in that condition you have been guilty of negligence which contributed to your injury, and you cannot recover. To my mind that is all there is in the so-called simple tool doctrine in states like Missouri, where we have fixed views upon assumed risk. You can show the simple character of the tool, and the obviousness of the defects, to show contributory negligence.''

The court also held that contributory negligence did not defeat recovery under the Federal Employer's Liability Act and therefore a finding by the jury that the master was negligent in furnishing the tool made a case for the jury. The fact that the Supreme Court of the United States reversed the case makes no difference here as this case is not brought under a federal statute. The court mentions the fact that it is negligence for the plaintiff to use an unsafe tool ''if the defects are open and glaring, and so open and glaring that a reasonably prudent person would not undertake to use them in the work being done.'' Whether the defects were so open and glaring as to convict the plaintiff of contributory negligence as a matter of law was not stated, and the court did not overrule, criticize or distinguish the case of Lowe v. Railroad, supra, but based its holding that the case was for the jury on the ground that contributory negligence was not a complete defense. In State ex rel. McLaughlin v. Trimble, 274 S. W. 391, the Supreme Court adopted an opinion of this court in which it was said that the case of Williams v. Pryor, supra, merely holds that the simple tool doctrine has only to do with the contributory negligence of the servant, and not the primary negligence of the master; that this is based upon the fact that if the tool is so simple that the defects are open and glaring so that a reasonably prudent person would not undertake to use it in the work being done, then the use of the tool under the circumstances would be contributory negligence. To the same effect is the holding in Neely v. Railroad, 14 S. W. (2d) 972. In Allen v. Missouri Pacific R. Co., 294 S. W. 80, the case of Lowe v. Railroad, supra, was cited with approval and explained. The court said that in the Lowe case plaintiff was held not entitled to recover upon the ground that the pick was a simple tool; that, while a sharp pick might be a little safer than a dull one, it did not follow that a dull one was not reasonably safe; that plaintiff knew all about it; knew that it was liable to slip out of the tie at any time, because it had done so before,

and it grew dull after two or three days of use, yet he did not apprehend any danger in the event it would slip; that it was not a case where a latent defect was shown or where the master had a superior knowledge of the condition of the tool, but a case of a man working using an ordinary tool, possessed of all the knowledge that could be acquired concerning its safety, and apprehended no danger from its use. The court said that the Lowe case was also decided on the further ground that the plaintiff was assumed to be under as much apprehension as was defendant that if the pick slipped he might fall, and that if he apprehended danger of his falling, he should have exercised ordinary care to avoid such a mishap. That this doctrine of the Lowe case was expressly approved in the Allen case is shown by the fact that the court said:

"Upon the last point, it is proper to observe here that, if the wrench used by plaintiff had been one worn, so that it sometimes had slipped from the nut, and he had continued to use it, he would have been bound to exercise ordinary care to take a stance adapted to the preservation of his balance, if the wrench slipped; but this case is not of that character."

The court also cited with approval Blundell v. Miller Elevator Mfg. Co., 189 Mo. 552, in which it was held that a ladder is a very simple appliance, one that is familiar to every grown man; that its liability to slip when not resting firmly or securely is a matter known to all men, yet ladders are constantly used and very few of them have prongs or safety hooks thereon. In the Blundell case the court held that plaintiff was not entitled to recover. In Watson v. Carthage Marble and White Lime Co., 290 S. W. 649, it was held that the master was not liable for negligence in furnishing a workman with a defective key. The Springfield Court of Appeals said:

"If defendant is to be held liable in this case, it must be upon the ground that the key which jumped out and injured plaintiff was defective at the time, and that the foreman under whom the plaintiff was working at the time of the injury was negligent in not discovering the defective condition of the key and having it replaced by another before the injury occurred. The plaintiff in this case has shown by his own testimony that he was an experienced workman. He had, on some occasions, filled the place of foreman. He was as competent as the foreman under whom he worked to judge of the safety of the key. He had a better opportunity than the foreman to observe the wearing effect of its use, for he handled and used it all the time. He was not required to use this particular key or quit work, but he could have discarded it and selected another at any time. He was in no way prevented from using his own knowledge and skill for his own protection and, had he done so, he could certainly have as readily and surely protected himself as the foreman by the utmost care could have done the same thing. Under such a state of facts, to convict

a foreman of negligence necessarily convicts the plaintiff of negligence also. That being true, plaintiff cannot recover."

We have concluded that the simple-tool doctrine in Missouri amounts to nothing more than the mere rule that a servant is guilty of contributory negligence as a matter of law if, by using a simple tool, he subjects himself to a danger so glaring and obvious that a reasonably prudent person would not have done so; and that if there be a patent defect and danger therefrom obvious to the master and servant alike, and the tool, its defect, and the danger incident to the use to which it is to be put, are, by reason of the experience and knowledge of the servant, as well known to him as to the master, then the jury may not find that the master was negligent and the servant was not, in view of the fact that if either was guilty of any failure, the other was guilty of the same. We think the doctrine is very limited. If there be any inequality between the two which would justify the jury in holding that a reasonably prudent person would not have furnished the tool, but would have used it had it been furnished to him under the circumstances, then the jury is at liberty to hold the master guilty and the servant blameless. Such an inequality exists if the defect was latent and could have been discovered by such an inspection as it is the duty of the master to make, but which would not be discovered by such an inspection as the servant, under the press of his duties, could be expected to make. The parties would not be on an equal footing if the servant was inexperienced, and therefore, although he understood the simple nature of the tool, did not understand the danger inherent in using it in work with which he was unfamiliar. We think such an inequality would exist for a reasonable time if the servant had complained of the defect and the master had procured his continuance in the work under the promise to remedy the defect, unless imminent peril was obvious. The order of the foreman to use the tool and his failure to furnish any other, constitutes such inequality unless the danger of using the defective tool could easily be avoided by the manner of its use, or unless the use thereof entails glaring imminent danger. We do not believe that an assurance of safety constitutes an inequality in the case of a servant who knows as much as or more than the master about the tool and the danger incident to its use in the particular work. An assurance amounts to nothing unless it is relied upon.

In this case defendant's foreman not only gave an assurance of safety, but did so concerning a tool which was not so defective that it can be said that obvious peril was imminent, and at the same time told the servant that the tool was the best that could be furnished and ordered him to use it. Under such circumstances the servant had the election to use the tool or quit his job. The danger was inherent in the work if the tool was used in any intended manner.

It was a question for the jury whether or not the plaintiff acted as a reasonably prudent person in risking the use of the tool. We see no difference between the principle involved here and that involved in the cases of Pelster v. Shamrod Boiler Co., and State ex rel. Malleable Casting Co. v. Reynolds, supra.

Appellant contends that the tool in question was bought from a reputable manufacturer, and therefore defendant could not be held liable for negligence in furnishing it to the plaintiff. Even though an employer may rely upon the assumption that a tool bought from a reputable manufacturer is fit for use, yet he may not rely upon the assumption that it will remain fit after being in use for a long time. [State ex rel. McLaughlin v. Trimble, 274 S. W. 391.] Furthermore, there was evidence that defendant's foreman knew that the tool was defective.

Appellant contends that the court erred in refusing to discharge the jury after the plaintiff improperly got before the jury the fact that an insurance company was interested in the defense. We think it was improper for plaintiff to inject the insurance company's name into the case, and we think that the defendant did all that was necessary to save its exceptions. When plaintiff asked who paid the doctor, there were only two possible objections that could have been offered. One was that the evidence was incompetent and immaterial, and the other was that the plaintiff was attempting to inform the jury that an insurance company was interested in the defense. Defendant made the first objection and was excused from making the second because the question did not indicate the prejudicial nature of the impending answer. Therefore, since his objection that the evidence was incompetent and immaterial was overruled, all he could have done was to ask that the jury be discharged after the insurance company's name was mentioned by the doctor. It has been held that whenever it is legitimate to refer to the fact that an insurance company is interested in the result of a trial, the charge of bad faith will be rejected, even though more is said about the insurance company than is absolutely necessary to determine the qualifications of the jurors. [Wendel v. City Ice Co., 22 S. W. (2d) 215; Bishop v. Musick Plating Works, 3 S. W. (2d) 256; Maurizi v. Western Coal & Mining Co., 11 S. W. (2d) 268.] Respondent claims that in this case the jury had already learned from the examination on the *voir dire* that the Maryland Casualty Company was interested in the defense. This does not appear from the appellant's abstract of record. The respondent has not seen fit to furnish a supplemental abstract in the case, and has made no objection to the sufficiency of the appellant's abstract. We must therefore hold that the appellant had no right to inject the name of the insurance company into the case. It does not appear that there was any necessity or excuse there-

for. In such cases bad faith will be presumed as a matter of law. [Wendel v. City Ice Co., supra.]

Appellant claims that the court erred in giving plaintiff's instruction No. 1 because it is diametrically opposed to instruction D given by defendant. No attempt is made to point out wherein the plaintiff's instruction is erroneous. This is not a good assignment of error. [Braden v. Frienderichsen Floor and Wall Tile Co., 15 S. W. (2d) 923, l. c. 929.]

Appellant contends that plaintiff's instruction No. 2 was erroneous because by that instruction the jury was told:

"By negligence of plaintiff as used in these instructions is meant the failure to exercise reasonable care for his own safety. By negligence of defendant as used in these instructions is meant the failure to exercise reasonable care, if any you find, for the safety of plaintiff as elsewhere set out in these instructions if such you find."

The complaint is that it does not tell the jury that negligence is the absence of that care that would be exercised by an ordinarily prudent person under the same or similar circumstances. The instruction was correct as far as it went. If the defendant wished to have the jury told that reasonable care was the care that an ordinarily prudent person would exercise under the same or similar circumstances, it was at liberty to ask for such an instruction. [Wotters v. Chicago & Alton Ry. Co., 193 S. W. 877; Tucker v. Carter, 211 S. W. 138; Bond v. Williams, 279 Mo. 215, 214 S. W. 202; Powell v. Railroad, 255 Mo. 420, 164 S. W. 628.]

Because of the error in permitting an insurance company's interest in the defense to be injected into the case, and thereafter refusing the defendant's request that the jury be discharged, this case should be re-tried. Therefore it is idle to pass upon the question as to whether or not the verdict is excessive. The judgment should be reversed and the cause remanded. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of BARNETT, C., is adopted by the court. The judgment is reversed and the cause remanded. *Bland* and *Arnold, JJ.,* concur.