**PILLSBURY FLOUR MILLS CO. v. MILLER (two cases).**

**SAME v. KAMMEYER (two cases).**

**SAME v. KAMMEYER et al.**
Nos. 11944–11948.

Circuit Court of Appeals, Eighth Circuit.
June 16, 1941.

Paul Barnett, of Kansas City, Mo. (Emil B. Corzine, of Kansas City, Mo., H. P. Tudor, of St. Louis, Mo., and Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., on the brief), for appellant.

John B. Gage, of Kansas City, Mo. (Alfred B. Page, of Kansas City, Mo., Ike Skelton of Lexington, Mo., and Gage, Hillix, Hodges & Cowherd, of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and JOHNSEN, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

These five consolidated actions grow out of an automobile accident which occurred on April 30, 1938.

Mrs. Saverna Miller, Raymond Kammeyer and Eleanor Kammeyer were occupants of an automobile when it was struck by another automobile operated by Albert A. Meinershagen, Jr. The latter was instantly killed. Mrs. Miller, Raymond and Eleanor Kammeyer were seriously injured. All recovered judgments against appellant for damages on account of their injuries. Appellee George Miller, the husband of Saverna Miller, obtained judgment for damages for the loss of his wife's services and consortium, medical expenses and property damage. Arthur and Lena Kammeyer are the father and mother of Arthur and Eleanor Kammeyer, and obtained judgment for damages for the loss of services of their minor children and the expense of medical services for them. Each of the actions sought damages in excess of $3,000. The plaintiffs are residents of Missouri. The defendant is a non-resident corporation. The aggregate amount of the judgments was $29,000.

Meinershagen was appellant's salesman and was operating appellant's automobile at the time of the accident. His negligence is admitted. The questions presented are:

(1) Whether there was sufficient evidence that Meinershagen at the time of the accident was acting within the scope and in the course of his employment by appellant, and

(2) Whether error was committed by the District Court in the admission and exclusion of evidence.

Meinershagen had been in appellant's employ for approximately two years prior to his death. His duties consisted of calling upon customers for the purpose of selling appellant's products. His compensation was a fixed salary. An automobile was furnished by appellant for his use, appellant paying the expense of its operation. By reason of the extent of his service with appellant, Meinershagen was entitled to a vacation of two weeks in April, 1938. He discussed his vacation with appellant's sales manager, stating that he intended to go to Colorado and New Mexico. On Friday, April 15, 1938, he wrote appellant's office manager the following letter:

"4/15/38

"Mr. Chappell:

"I am not leaving till Monday evening and will give you a brief outline Sunday in a letter as to anything that might come up on my territory. If there is anything you might want to talk to me about you can call me at home Monday. I might be in the office Monday evening.

"Yours truly,

"Al

"Speedometer reading is 11512 mi"

It was customary for appellant's salesmen to use the automobiles assigned to them for their personal use, but when they did so they paid appellant three cents per mile therefor. Meinershagen was to use the automobile assigned to him on his vacation, hence the postcript giving the speedometer reading. The following day, after the above letter was written, Saturday, April 16th, Meinershagen was in Kansas City. His fiancee, who was to accompany him on his vacation trip, lived there. Appellant's branch office was also located there. During the morning he visited appellant's office and talked with the sales manager, leaving when the office closed at 1:30 P. M. He did not communicate further with the office before leaving on his vacation. The sales manager testified that Meinershagen's vacation was to begin Monday, April 18, 1938, and continue for two weeks.

With his fiancee accompanying him he drove to New Mexico and Texas, visiting his brother at Albuquerque and her brother at Tyler, Texas. They left Tyler with her brother accompanying them at 1:00 P. M., Friday, April 29th, and drove to Wichita, Kansas, arriving there at midnight. Meinershagen left his fiancee and her brother at a bus station in Wichita to take a bus at 12:40 A. M. to Kingman, Kansas, where the latter were to visit relatives. Kingman is west and Kansas City is east of Wichita. Meinershagen continued on to Kansas City. He arrived at his fiancee's sister's apartment in Kansas City about 6:00 or 6:30 A. M., Saturday morning, where he left some articles belonging to his fiancee. He remained there only five or ten minutes. At that time he apparently was very tired, he had not shaved, his clothes were mussed and his hair not combed. The accident occurred at about 7:30 A. M., one and one-half miles south of Higginsville, Missouri, and approximately fifty miles east of Kansas City. Meinershagen was traveling toward Higginsville at a speed estimated at eighty miles per hour. Mrs. Miller saw Meinershagen's car approaching and, seeing it gradually veering across the paved highway, drove her car onto the right shoulder of the highway. Meinershagen's car continued to veer to the left and without diminishing its speed struck the Miller car "head on", with terrific force. As noted, Meinershagen was instantly killed. When his car was reached by the first to arrive at the scene of the accident, he was cleanly shaved, had on a business suit, white shirt and tie. Between the divided front seats of his car was found an imitation leather or leather zipper brief case which appeared to have something in it. The contents were not examined. He had no brief case with him on his vacation trip. Appellant had equipped him with a brief case described as rather bulky and with no zipper. The brief case furnished by appellant was returned to its office two or three weeks after the accident by a relative of Meinershagen and then contained a sales manual, order book and code book.

Higginsville was in Meinershagen's territory. It was his custom to go there at intervals of two or three weeks, usually on Saturday, when he would call on his customers, check their stock and take orders for appellant's products. His father lived in Higginsville and was one of Mein-ershagen's best customers. Frequently, he spent Sunday there and although St. Joseph, Missouri, was his headquarters he referred to Higginsville as his home. He had, previous to his employment with appellant, been in business there. He had no regular hours of employment and could begin and end his day's work as he chose. He was supposed to work on Saturday morning. Appellant's employees were divided into groups and to each group was assigned a quota of business for the year. If the quota was reached each employee in the group received a bonus in salary. On April 30th, the day of the accident, Meinershagen's group had one month in which to reach its quota. Meinershagen was required to make a written report daily of his business activities when working. His last report was for Friday, April 15th. Appellant's Kansas City office usually opened at about 8:30 A. M.

It is appellant's contention that any presumption that Meinershagen was acting in the course of and within the scope of his employment which arose from the fact that he was in the general employ of appellant and was operating appellant's automobile, disappeared upon proof that Meinershagen was on his vacation at that time.

Whether the fact, if it be a fact, that Meinershagen's vacation period had not yet expired at the time of the accident, is sufficient to destroy the presumption noted, will become purely abstract in this case if, as appellees contend, all of the facts in evidence when viewed in an aspect most favorable to the jury's conclusion, were sufficient to support that conclusion without the aid of the presumption. We, therefore, pass to the consideration of the latter question.

Were the facts proven sufficient to justify the inference that Meinershagen was acting within the scope and within the course of his employment at the time of the accident? We glean from the testimony of his customers at Higginsville that Meinershagen was interested in his work as a salesman of appellant's products. He discussed nothing else with those customers when calling on them and always appeared to enjoy seeing them. He belonged to a group of employees who would profit by the attainment of a fixed quota of sales within a pre-determined period which would end in thirty days after the date of the accident. He left Tyler, Texas, many hundreds of miles distant from Kan-

sas City, at 1:00 P. M., Friday, the day before the accident and, with the assistance of his fiancee's brother drove constantly until he reached the scene of the accident, stopping only for refreshments once in Oklahoma, pausing to leave his fiancee and her brother at Wichita and once again briefly at Kansas City. He had been away from his work for approximately two weeks and had not called on his customers at Higginsville within that time. It was his custom and duty to call on them at intervals of two or three weeks. No one had done that for him while he was away. There is no suggestion that it was necessary that he arrive at his father's home which he called his home at an hour that required such traveling speed and constancy. At some place between the apartment of his fiancee's sister and the scene of the accident and between 6:00 or 6:30 and 7:30 A. M. he evidently shaved hurriedly, changed his clothes and picked up a brief case. He was usually careful about his appearance but again there is no intimation that there was any especial reason for those acts if his only purpose in reaching Higginsville early Saturday morning was to visit his parents. He drove rapidly from Kansas City toward Higginsville and if the accident had not occurred would have reached the latter place at about the time he frequently called on his customers there. There is no explanation other than the inference of business urgency for leaving his fiancee and her brother at Wichita at midnight to take a bus for a comparatively short distance to the home of their relatives.

From these facts the inference is strong that Meinershagen was hurrying back from his vacation to resume his duties of calling upon his Higginsville customers at the customary hour and on the day of the week he usually called upon them. We do not agree with appellant's conclusion that the facts are equally consistent with the theory that Meinershagen was merely returning to his home preparatory to later resuming his employment. There was no error in submitting the case to the jury. State ex rel. Waters v. Hostetter, 344 Mo. 443, 126 S.W.2d 1164; Waters v. Hays, Mo.App., 130 S.W.2d 220; Byrnes v. Poplar Bluff Printing Co., Mo.Sup., 74 S.W.2d 20; Steinmetz v. Saathoff, Mo.App., 84 S.W.2d 437; Yerger v. Smith, 338 Mo. 140, 89 S.W.2d 66, loc. cit. 77.

Appellant contends that reversible error was committed by the trial court in denying appellant's motion to strike a portion of an answer made by the witness Rodecker. The witness was a Missouri State Highway Patrolman and one of the first to reach the scene of the accident. When asked by appellees' counsel on direct examination if he observed any object in the Meinershagen car, he replied that he had, and upon further inquiry as to what the object was he replied: "Oh, it was a brief case, leather apparently, leather or imitation leather brief case, such as salesmen carry." Appellant's counsel interposed the following motion: "I move that be stricken out 'such as salesmen carry' as a conclusion." The Court's ruling was: "Yes, that is true, but the officer is trying to describe the brief case. He said it was of such a character, such as salesmen carry. I see your point, however, he would have a right to describe the brief case and the nature of it. It is not offered for the purpose you have in mind. Objection overruled." There appears to have been nothing more said on the subject at the time or thereafter. No request was made to limit the purpose for which the jury could consider the statement and the jury's attention was not directed to the statement or to that witness' testimony in the Court's charge. No exceptions were taken to the charge.

It is apparent that in ruling upon appellant's motion to strike that the Court had in mind the general rule that a nonexpert witness may give his conclusion as to what an article or condition was when the descriptive facts are known to him but consist of such a variety of facts and circumstances, are so numerous, and consist of such a large number of minute details, that the individual facts giving rise to the mental picture of the object or condition may not be readily isolated and stated. Scanlon v. Kansas City, 325 Mo. 125, 28 S.W.2d 84, loc. cit. 95; Aetna Life Ins. Co. v. Kelley, 8 Cir., 70 F.2d 589, 93 A.L.R. 471; Partello v. Missouri Pac. Ry. Co., 217 Mo. 645, 117 S.W. 1138; Kiesel & Co. v. Sun Ins. Office of London, 8 Cir., 88 F. 243. In Aetna Life Ins. Co. v. Kelley, supra, 70 F.2d loc. cit. 593, 93 A. L.R. 471, this court quoted with approval the rule as stated in Partello v. Missouri Pac. Ry. Co., supra, 117 S.W. loc. cit. 1140: "So may a nonexpert give his opin-

ion in a great variety of cases when the facts known to him, and to which he would be competent to testify, would furnish no predicate whatever for the opinion of an expert witness. As a rule, such are confined to questions of identity, and such matters as may be open to the senses, but incapable of exact description. Thus a non-expert 'may testify that a person appeared to be suffering, was weak and helpless, appeared sick, looked pale or paler than usual, or was declining in health.'"

█ Appellant finds no fault with the rule, but insists that a brief case does not fall in the category of objects so difficult of ordinary description that the witness' opinion of the kind or type of the brief case could be properly received in lieu of the detailed descriptive facts. With that we fully agree. From the description of the brief case given by other witnesses it is apparent that there was nothing so unusual about it as to make difficult or impossible the statement of the descriptive facts concerning it. The statement in the form of the witness' opinion should therefore have been stricken. It is reasonably certain, however, that the error could not have been prejudicial. As noted, the trial court clearly indicated that the statement was permitted to remain solely for descriptive purposes. The complaint is that the description "such as salesmen carry" conveyed to the jury the impression that Meinershagen was then engaged in the business of a salesman and, a fortiori, appellant's salesman. But it was undisputed that he was appellant's salesman and that such was his business. If the statement had been "such as lawyers carry" the present complaint could not be made. If it had been "such as a satchel country doctors carry" it would have been very misleading in view of the other undisputed evidence. It is apparent, therefore, that the words used merely placed the brief case in a general class or type which other evidence, properly admitted, likewise did. The only dispute concerning the description of the brief case was whether the one found in the car was the one issued to Meinershagen by appellant. The condemned language would clearly have applied in either event. Hence, it could not have effected a conclusion on that issue.

█ It is further contended that the trial court committed error in refusing to permit appellant's Sales Manager to answer the following question: "Now, when was Mr. Meinershagen's vacation to terminate with regard to the date of his death?"

The witness testified when the vacation began and that it was for a two weeks period. It was a simple matter of calculation to determine when the two weeks period ended with reference to any given date, as the Court pointed out. Since the jury was clearly informed that the vacation was to end at the termination of a period of two weeks from the date it began, the desired evidence was before the jury and no prejudice resulted. Fuller Process Co. v. Texas Co., 8 Cir., 16 F.2d 108.

Appellant asserts there was error in the trial court's refusal to declare a mistrial because one of appellant's witnesses on cross-examination referred to the fact that appellant had liability insurance. The incident occurred in the following manner. Mr. Hogan, who had been employed by appellant for approximately ten years prior to July 1, 1938, and who was at the time of the accident its Sales Manager, had been examined extensively on direct examination concerning the terms of the verbal contract between appellant and Mr. Meinershagen concerning the use of the automobile involved in the accident. On cross-examination after Hogan was again questioned at some length concerning the contract he was asked the following question: "Just state to the Court and jury the full terms of that agreement." The question was objected to as repetitious. The objection was overruled and no error is assigned therefor. The following then occurred:

"A. We were told you understand that all employees operated under this plan regardless of their standing whether salesmen, sales managers or what their position was. It was understood that for this payment those men would have the same protection, if that is your question, the same protection to drive on personal driving as they did on company business. To what extent we were never told.

"Q. Now, that would be the same— A. (Interrupting) Insurance protection.

"Q. And that was a part of the— A. (Interrupting) That was the understanding we were given, strictly verbal.

"Q. Given by the Company? A. To me.

"Q. And through you to the other salesmen?

"Mr. Tudor: (Appellant's counsel) This is brought out in the statement as a conclusion of this witness, his understanding, for the purpose of prejudice and bias and I move on that statement that the Court declare a mis-trial.

"The Court: "The motion will be denied."

The examination was continued but no further reference was made to the question of insurance.

■ The Missouri courts have held in very positive and unequivocal language that any effort on the part of a litigant to inform the jury in a case of this kind that the other party has insurance protection will constitute reversible error. Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673; Allen v. Wilkerson, Mo.App., 87 S.W.2d 1056; Page v. Unterreiner, Mo.App., 106 S.W.2d 528; Melvin v. Cater, 221 Mo.App. 1212, 299 S.W. 103; Nolen v. Halpin-Dwyer Const. Co., 225 Mo.App. 224, 29 S.W.2d 215; Robinson v. McVay, Mo.App., 44 S.W.2d 238; Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538.

■ An examination of the cases cited and others bearing upon the subject, of which there are many, will disclose that always the question of good faith on the part of the party eliciting the information is of paramount importance in determining whether a new trial will be ordered. If the record affirmatively shows that there was no excuse for injecting the suggestion that insurance coverage existed, bad faith will be presumed. Wendel v. City Ice Co., 224 Mo.App. 152, 22 S.W.2d 215, loc. cit. 219; Nolen v. Halpin-Dwyer Const. Co., 225 Mo.App. 224, 29 S.W.2d 215, loc. cit. 219; Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, loc. cit. 677. If, however, counsel propounds a question which calls for proper evidence and the witness in his answer includes a reference to insurance, the good faith of counsel will be presumed. In discussing the right of counsel to make inquiry of the prospective jurors on voir dire concerning their rela-

tion to an insurance company known by counsel to be defending the action the Missouri Supreme Court said: "The courts cannot well impugn the motives of litigants or lawyers in this respect and do not do so unless it is demonstrated or made apparent that the privilege of making the preliminary inquiry is not being used in good faith, but to prejudice the jury and obtain an unfair advantage." Rytersky v. O'Brine, supra, 70 S.W.2d loc. cit. 540.

■ In the case at bar appellees' counsel had the right to ask what the entire agreement was concerning the use of the automobile. Jones v. Missouri Freight Transit Corp., 225 Mo.App. 1076, 40 S.W.2d 465, loc. cit. 470. There is nothing to indicate that in doing so there was any lack of good faith on the part of counsel in seeking proper evidence. That part of the witness' first answer which was improper, while responsive, was apparently wholly unexpected. There was no objection to that answer. The subsequent references to insurance came when the witness interrupted and voluntarily gave them. Appellant's counsel did not ask that the voluntary statements be stricken. The witness was called by defendant and had been until shortly before the trial appellant's sales manager. There is no suggestion that he was unfriendly to appellant. His testimony indicates the contrary. There is no intimation or charge that any collusion existed between appellees' counsel and the witness concerning the reference to insurance. Nor is there any charge of bad faith of counsel made. Under such circumstances a reversal should not result. Jones v. Missouri Freight Transit Corp., 225 Mo. App. 1076, 40 S.W.2d 465; Edwards v. Smith, Mo.App., 286 S.W. 428, loc. cit. 430; Weinlein v. Peoples, Mo.App., 241 S.W. 645; Robbins v. Olson-Schmidt Construction Co., Mo.App., 215 S.W. 779; Warner v. Oriel Glass Co., 319 Mo. 1196, 8 S.W.2d 846, 60 A.L.R. 448; Distler v. Columbia Nat. Life Ins. Co., 206 Mo.App. 263, 227 S.W. 133; Kaley v. Huntley, Mo. App., 88 S.W.2d 200.

No prejudicial error appearing, the judgments are affirmed.