# WILLIAM WILLIS, Respondent, v. BUCHANAN COUNTY QUARRIES COMPANY, Appellant.*

Kansas City Court of Appeals.    December 29, 1924.

1. **MASTER AND SERVANT: Negligence: Whether Rock Bin Was of Faulty Construction Held for Jury.** In an action for injuries received by plaintiff while in a bin shoveling crushed rock, whether testimony of defendant, that plaintiff should have shoveled rock away so that it would be possible for him to stand on the floor of the bin to do his work was sufficient to overcome plaintiff's evidence as to faulty construction of bin, *held* for the jury.

2. ———: ———: **Duty of Master to Provide Reasonably Safe Place.** Duty of master to provide a reasonably safe place for performance of duties of servant, and if master fails to do this, he may not escape liability to injured servant, unless the place is so glaringly and obviously dangerous that an ordinarily prudent man would not undertake to work therein.

3. **NEGLIGENCE: Not Essential to Plaintiff's Recovery That Defendant Should Have Anticipated Very Injury That Occurred.** It is not essential that defendant should have anticipated the very injury that occurred, but it is sufficient that an injury of some kind might reasonably be anticipated and that defendant's negligence was proximate cause of injury.

4. **MASTER AND SERVANT: Proximate Cause: Improper Construction of Rock Bin Held Proximate Cause of Injury.** Where it was necessary for plaintiff while loading crushed rock from an improperly constructed rock bin to go into same and shovel rock towards loading chute, and while so engaged was injured, the improper construction of bin *held* proximate cause of injury.

5. ———: **Where Plaintiff Was Assured by Foreman That Rock Bin Was Not Dangerous to Work in He Did Not Assume Risk by so Doing.** Where plaintiff upon being ordered to go into rock bin to shovel rock informed foreman that it was dangerous for him to do so and received an assurance from foreman it was not dangerous and repetition of order to enter bin, he did not assume the risk by working therein.

6. ———: **Question Whether Foreman Assured Plaintiff That it Was Safe to Work in Rock Bin and Whether He Relied on Such Assurance**

Willis v. Buchanan Co. Quarries Co.

Held Properly Submitted to Jury. Question of whether foreman assured plaintiff that rock bin was safe to work in and whether he relied upon such assurance *held* properly submitted to jury.

7. ————: Evidence: Evidence Concerning Kind of Rock Bins Used at Other Quarries Held Proper. Evidence concerning the kind of bins used at other rock quarries, tending to show the usual and proper construction of such bins, especially as to the pitch of floor required to expedite the flow of crushed stone, *held* proper.

8. EVIDENCE: Evidence of Doctor as to Condition Shown by Analysis of Plaintiff's Urine Held Not Objectionable as Hearsay. Evidence of doctor as to plaintiff's injuries shown by an analysis of his urine *held* not objectionable as hearsay where analysis was made in laboratory of doctor and under his supervision, and supplemented by testimony of other doctors testifying to same conditions.

9. TRIAL PRACTICE: Inquiry as to Whether Any Prospective Jurors Were Interested in Any Specific Insurance Company Held Proper. Where it appeared that defendant carried indemnity insurance, plaintiff had right to know whether any of the prospective jurors were interested in any way directly or indirectly in any specific insurance company.

10. APPEAL AND ERROR: Misconduct of Counsel in Asking Questions of Jury on Voir Dire Examination Not Reviewable Where Objectionable Questions Were Not in Record. Error cannot be predicated on alleged misconduct of counsel in examining jury on their *voir dire* and informing them that defendant was carrying liability insurance where objectionable questions were not incorporated in record, as appellate court may not presume that questions asked were improper.

11. APPEAL AND ERROR: Excessive Verdict: While Action of Trial Court as to Whether Amount of Verdict for Damages Was Excessive is Not Binding on Appellate Court, Its Judgment is Entitled to Much Weight, and Under Evidence Verdict for $7,500 Held Not Excessive. Trial court is in a more advantageous position than appellate court to judge whether a verdict for damages, to a young man who received injuries to back, kidneys, and nervous system of a permanent character is excessive, and while action of trial court is not binding on appellate court, its judgment is entitled to much weight, and under evidence verdict for $7,500 *held* not excessive.

ON MOTION FOR REHEARING.

13. ————: Defendant Not Prejudiced by Refusal of Trial Court to Strike Out Testimony of Doctor as to Plaintiff's Injuries Because

Based Partly upon History of Case. Defendant was not prejudiced by refusal of trial court to strike out evidence of doctor as to any permanent condition of plaintiff because it was based partly upon what he discovered from his examination and partly upon history of case, especially where only time doctor said he took into consideration history of case was in response to leading questions by defendant's counsel.

---

*Corpus Juris-Cyc. References; Appeal and Error, 4CJ, p. 756, n. 24; p. 871, n. 6; p. 873, n. 23; p. 1002, n. 41; Damages, 17CJ, p. 1091, n. 85; Evidence, 22CJ, p. 215, n. 48; Juries, 35CJ, p. 394, n. 34; Master and Servant, 39CJ, p. 308, n. 13; p. 801, n. 71; p. 1026, n. 61; p. 1049, n. 15; p. 1149, n. 57; p. 1191, n. 22; Negligence, 29 Cyc., p. 495, n. 64, 66.

Appeal from the Circuit Court of Buchanan County.—
*Hon. L. A. Vories*, Judge.

AFFIRMED.

*Miles Elliott* and *Duvall & Boyd* for respondent.

*John S. Boyer* and *Mosman, Rogers & Buzard* for appellant.

ARNOLD, J.—This is an action for personal injuries alleged to have been received through the negligence of defendant while plaintiff was working in a bin shoveling crushed rock. Verdict was for plaintiff in the sum of $12,500 but the trial court required a remittitur of $5000, and after motions in defendant's behalf for a new trial and in arrest of judgment had been overruled, judgment was entered for $7500. Defendant appeals.

At the time of the alleged injury defendant was operating a rock quarry and crusher about three miles south of the city of St. Joseph, where plaintiff, a man about thirty-five years old, was employed as a common laborer. In connection with the crusher a certain bin was maintained, the dimensions of which were thirty to forty feet in length and from twelve to fifteen feet in width. The

bin was constructed upon the side of a hill which sloped south. The long way of said bin was north and south, the width being east and west. The bin concerned in this suit was known and designated as No. 3 bin and into it was conveyed from the crusher No. 3 crushed stone, which ranged in size from that of a hen's egg down to small gravel. On the east of No. 3 bin and joined thereto was a second bin known as No. 2, into which larger sized crushed rock was conveyed, known as No. 2 rock. There was no No. 1 bin. The floor of bin No. 3 sloped to the south, and the rock was loaded into trucks or wagons at or under the south end of the bin, through a chute and trap door located at the south end thereof. The bin was constructed of wood, the floor being 2x8 planks and the sides and ends of boards. Extending across the bin from east to west were two iron rods designed to brace the sides of the bins and prevent them from spreading. The rock crusher was north and a little east of No. 3 bin and the crushed stone was carried by means of a bucket belt from the crusher over a screen, through a spout and dumped therefrom at a point nearer the east side but about the center of the bin north and south. The south wall of the bin was from twelve to fifteen feet in height, the north wall being lower. The upper edges of the sides thereof were approximately horizontal. Wagons and trucks were loaded through the chute above mentioned at the south end of the bin.

Plaintiff began working for defendant soon after July 4, 1923, as a common laborer, and continued in such employment until the 23d of August of the same year, on which date the alleged injury occurred. The negligence charged in the petition is:

"That defendant so negligently constructed and maintained the said rock bin that the crushed rock would not run, discharge and pour entirely from said bin by force of gravity, and so negligently constructed and maintained said bin . . . and the floor of said bin, that the same did not slope sufficiently to permit and cause the said crushed rock therein to pour and discharge there-

from by force of gravity, but so negligently constructed and maintained the said floor of said bin that, while the same was sloping, nevertheless a large quantity of the crushed rock in said bin would frequently remain on the floor thereof when the said chute leading from said bin was opened for the purpose of emptying said bin, and negligently ordered and required plaintiff, in the performance and discharge of his duties for defendant to get into said bin and stand on said crushed rock on the sloping floor of said bin, and to shovel said rock from said bin into the chute leading therefrom.''

It is charged that defendant knew, or by the exercise of ordinary care could have known that it was dangerous and unsafe for plaintiff to stand on said crushed rock and shovel same into said chute, but negligently ordered plaintiff so to do; that plaintiff complained to defendant's vice principal and foreman in direct charge and control over plaintiff and over the performance of his duties, that such rock on the floor of said bin might slip and move and injure plaintiff if such order were obeyed; that the said foreman and vice principal then and there negligently assured plaintiff that he could with safety obey said order; that relying on such assurance, and in obedience to said order, plaintiff went into the bin in compliance with said order; that while so doing the said crushed rock on the floor of said bin slid, slipped, and moved and caused plaintiff to fall and be thrown with great force and violence, and to strike upon and against hard objects and substances, by reason and as a result whereof plaintiff was injured as hereinbefore alleged.

The testimony tends to show that while plaintiff was shoveling the stone as directed while standing on some loose stone, the pile above him on the incline rolled down striking his feet, thus throwing him backward; that his back about the region of the kidneys struck the lower or south one of the two iron brace rods which ran across the bin as above stated.

The answer is a general denial with pleas of contributory negligence and assumed risk. The reply was a general denial. Trial to a jury resulted as above stated.

There was substantial evidence introduced in plaintiff's behalf, and properly received by the court, to support the allegation in the petition that by reason of the faulty construction of the bin referred to in the evidence, the floor thereof was without sufficient slant, or pitch, to carry the stone by gravity to the loading chute. There was evidence also tending to show that the construction of said bin in this respect was not such as is ordinarily employed in the building of such bins. And there was evidence that the object and purpose of constructing the bins with such pitch or incline is that the force of gravity will carry the crushed stone to the loading chute at the bottom thereof.

Appellant contends that the court erred in overruling defendant's demurrer at the close of all the evidence, and in refusing to instruct the jury peremptorily to return a verdict for defendant.

Plaintiff's testimony tends to show that owing to faulty construction of the floor of the bin, to-wit, the lack of sufficient pitch therein, it was necessary when loading crushed rock from the bin to send a laborer into the bin to shovel the stone toward the loading chute. It was further shown that this was not the usual way to construct such bins; that no provision was made for a safe place on which plaintiff and other laborers engaged in shoveling could stand in safety on, or among the stones. Defendant's testimony and argument on this point seem to be directed to the point that plaintiff should have shoveled the stone away so that it would be possible for him to stand on the floor of the bin to do his work—this argument being for the purpose of overcoming the charge of negligence in respect to the construction of the bin. But whether this testimony of defendant was sufficient to overcome plaintiff's evidence as to faulty construction was a question for the jury, and its submission to them was proper.

The rule is well established that it is the master's duty to provide a reasonably safe place for the performance of the duties of the servant. If the master fail to do this he may not escape liability to an injured servant, unless the place is so glaringly and obviously dangerous that an ordinarily prudent man would not undertake to work therein. [Fisher v. Construction Co., 263 S. W. 1022; Curtis v. McNair, 173 Mo. 271, 73 S. W. 167; Clark v. Engineering Co., 263 S. W. 500; Jewell v. K. C. Bolt & Nut Co., 231 Mo. 177; Mueller v. Ralston Purina Co., 254 S. W. 720; Soltesz v. Provision Co., 260 S. W. 990.]

It is further charged that the court erred in refusing to give defendant's instructions 1-b, 1-c, 1-d, and each of them in the nature of special demurrers, withdrawing from the jury's consideration certain charges of negligence on which issue defendant contends there was no evidence proving or tending to prove, a cause of action against defendant. The basis of this contention is that the injury to plaintiff could not reasonably have been anticipated in the usual conduct of the work and therefore defendant is not liable.

In refutation of this charge plaintiff contends and properly so, that it is not essential to plaintiff's case that defendant should have anticipated the very injury that occurred, but it is sufficient that an injury of some kind might reasonably be anticipated and that defendant's negligence was the proximate cause of the injury. [Buckner v. Mule Co., 221 Mo. 700, 120 S. W. 766; Dean v. Railroad Co., 199 Mo. 386, 97 S. W. 710; Bleisner v. Electric Co., 174 Mo. App. 139, 157 S. W. 980.] It is not denied that defendant was responsible for the improper construction of the floor bin, which it is alleged caused plaintiff to fall. The proof showed such improper construction. It must be held that such improper construction was the proximate cause of the injury.

This ruling disposes of defendant's fourth assignment of error to the effect that the master is not liable for a condition which was not the cause of the injury to

his servant and that the negligence alleged herein was not the proximate cause of the injury.

It is further charged that under plaintiff's testimony he assumed the risk and the court should have sustained the demurrer to the evidence. The evidence in plaintiff's behalf tends to show that on being ordered to go into the bin and shovel stone, plaintiff informed the foreman that it was dangerous to do so, and received an assurance from the foreman that it was not dangerous and a repetition of the order to enter the bin and shovel the rocks. This was substantial evidence to the effect that plaintiff did not assume the risk. [Curtis v. McNair, supra; Williamson v. Elec. Lt. & P. Co., 219 S. W. 902.] We think under the evidence there was no assumption of risk.

It is further urged that the court erred in submitting to the jury the question of assurance of safety, because (1) the evidence shows that plaintiff's knowledge of the risks and dangers incident to the work was equal if not superior to that of defendant and its foreman; (2) there was no proof of specific complaint or of the specific assurance pleaded, and (3) there was no proof that plaintiff relied on the assurance of the foreman. As these three subdivisions refer to, and are a part of, the same charge and apply to the same subject-matter, they may properly be considered together.

Plaintiff's evidence is to the effect that he had worked in the bin a few times previous to the occurrence in question; that he made specific complaint to the foreman; that the foreman assured him of safety and that he relied upon such asurance. In the light of this evidence, we think the court was warranted in submitting the case to the jury. [Hayden v. Gravel Co., 186 S. W. 1193; Curtis v. McNair, supra; Tull v. Ry. Co., 216 S. W. 572.] This ruling also covers defendant's charge that the court erred in refusing defendant's instructions 1-a to 1-i, inclusive. These were all in the nature of demurrers to the evidence and were properly refused.

218 Mo. App.—45.

It is further charged the court erred in admitting irrelevant and immaterial evidence concerning the kind of bins used at other rock quarries. This testimony tended to show the usual and proper construction of such bins, especially as to the pitch of the floor required to expedite the flow of the crushed stone. Such proof is permissible and is held to be proper. [See Fisher v. Const. Co., supra; Brown v. Electric Co., 251 S. W. 141; Jewell v. Bolt & Nut Co., supra.]

A further charge is that the court committed error in permitting Doctor Walker, who attended plaintiff, to give testimony based on secondary or hearsay evidence. The evidence to which this charge is directed is found in the record as part of his direct examination:

"Q. What did the tenderness in the region described indicate? A. Indicates inflammation of the tissues and structures; also the man's color was bad, indicating a toxic condition, poor elimination of poisons, and I had a sample of urine and had that examined which showed up—

"Mr. Mosman: We object to that as calling for hearsay.

"The Court: Objection overruled.

"To which ruling of the court defendant at the time excepted.

"The Witness: The urine showed up blood, some albumen, casts, urates and phosphates.

"Q. What was the significance of that?

"Mr. Mosman: Defendant moves to strike out the answer on the ground that it is an examination made by somebody else.

"The Court: Objection overruled.

"To which ruling of the court defendant at the time excepted."

And on cross-examination, Doctor Walker testified as follows:

"Q. What did you find on examination of his kidneys? A. I report the chemical findings from microscopical examination—

"Q. Wait a minute— A. You asked me to describe my examination

"Q. All right—now that was an examination made by somebody else? A. Made in my laboratory, where I have all my work done.

"Q. Were you present when the examination was made? A. I don't remember whether I was right in there or not.

"Q. You are basing your answer as to the examination of the urine upon the report made to you by somebody else in your laboratory? A. Yes, sir, same as if you were in there and I had it made, I would accept it as facts.

"Q. I am asking you if you accepted somebody's report and are basing your testimony upon the report given to you by somebody else? A. That part of it, yes, sir.

"Q. What other examination did you personally make? A. Physical examination, which I have described in part here before."

The testimony shows that the analysis was made in the laboratory of Doctor Walker and under his supervision. And Doctor Walker's testimony on this point was supplemented by the testimony of Doctors Robertson and Sampson who testified to the same conditions.

Error is also predicated of the action of the trial court in refusing to discharge the jury because of alleged misconduct of plaintiff's counsel in examining the jury on their *voir dire* and by such examinations informing them that defendant was carrying liability insurance. It is disclosed by the record that during said examination by counsel for plaintiff objection was made by counsel for defendant, as follows:

"MR. MOSMAN: I want to state to the court this, beyond the hearing of the jury, that during the examination of the jurors counsel for plaintiff asked if any of them were interested in, in any manner, as an agent, policyholder, stockholder, or in any other manner connected with the Traveler's Insurance Company, an in-

surance company which indemnifies employers against claims for personal injury.

"THE COURT: The last part of that was not asked by counsel. He stated 'an insurance company which insures . . .'

"MR. MOSMAN: We want to object to the question and to the statement of counsel to the jury, and move the court to discharge the panel for the reason that the question is prejudicial, and for the further reason that we have had this same matter up with the court and with the counsel in this case on numerous occasions and the court has clearly indicated heretofore how far this kind of examination would be allowed to proceed, and counsel knew that the court would not allow the examination to proceed beyond asking in regard to a definite insurance company, without stating the business of that insurance company, and we claim this question is prejudicial and ask the court to discharge the panel.

"THE COURT: The court instructs the counsel not to embody in his question the peculiar nature of the business of this company, and so far as any question has been asked in the presence of the jury, that has not been embodied in it and for that reason the motion to discharge the jury is overruled.

"MR. MOSMAN: Your Honor states that counsel asked the jury whether or not they were connected with this company, 'an insurance company which insures . . .' he went that far.

"THE COURT: The court has ruled upon the matter.

"To which ruling of the court the defendant at the time excepted."

We are not favored by having the objectionable questions incorporated in the record and for our consideration there is only the colloquy between the court and counsel, out of the hearing of the jury. It is true that occasionally counsel, possibly from sinister motives, endeavor to inject the question of indemnity insurance into the trial of a case for the purpose of influencing a verdict. To permit this is reversible error. But of

course parties are entitled to know the relationship existing between any juror and the party really in interest, though not appearing of record.

It must be conceded plaintiff had the right to know whether any of the prospective jurors were interested in any way, directly or indirectly, in any specific insurance company. [Kinney v. Ry. Co., 261 Mo. 114, 169 S. W. 23; Smith v. Scudiero, 204 S. W. 565; Wagner v. Const. Co., 220 S. W. 897.] We may not presume that the questions asked were improper and as the record fails to show what they were, this point is decided against defendant's contention.

Finally defendant complains that the verdict is grossly excessive. The petition charges injuries to plaintiff's back and kidneys and to his nervous system. The testimony tends to sustain these allegations. The physician, Dr. Walker, testified that plaintiff's kidneys are permanently injured and that blood and pus were found in the urine. The evidence further tends to show that plaintiff is comparatively a young man and that he is permanently disabled. The trial court was in a more advantageous position than we are to judge of this matter; and while his action in respect thereto is not binding on us, yet his judgment is entitled to much weight. The verdict of the jury was for $12,500, as hereinbefore stated, but the trial court required a remittitur of $5000. We do not feel justified, under the circumstances, in disturbing the verdict and judgment in this respect.

The judgment is affirmed. *Trimble, P. J.,* concurs; *Bland, J.,* concurs in result.

ON MOTION FOR REHEARING.

ARNOLD, J.—In its motion for rehearing defendants asks, at the hands of this court, a ruling upon defendant's motion to strike out the evidence of Doctor Walker as to any permanent condition of plaintiff, for the reason that it is based partly upon what he discovered from his examination and partly upon the history of the case, and is hearsay testimony.

This point was raised incidentally in defendant's brief and argument, but was not raised in its points and authorities. The record discloses that the evidence to which the motion to strike out applies was brought out by cross-examination, and is as follows:

"Q. Now, in giving your opinion here as to this man's condition I understand you necessarily take into consideration the history of the case you got from him? A. As far as it was of value to me.

"Q. But in telling the jury your opinion you do take that into consideration? A. To a small degree, because of the fact, if I may explain, in such cases as these they may be liars and everything else, and they are trying to pull something on me.

"Q. They can't do that, can they?

"MR. ELLIOTT: We object to the interruption.

"THE WITNESS: I don't take these cases for that purpose at all. I will help a patient if I can and do what I can as far as my services go. Therefore, as to the history of the accident or the case I have to see it myself; that should have very little weight in the cause, because these cases are of daily occurrence and I don't know myself how they occurred; the only thing is, I find them there. A man breaks his leg. He might tell me different ways he did it. It wouldn't make much difference. I found he had a broken leg, the important part; history might be considered but it don't have much to do with the broken leg."

From these excerpts from the Doctor's testimony, it is manifest the cause of defendant was not prejudiced by the refusal of the court to strike out. This is especially true from the fact that the only time the witness said he took into consideration the history of the case was in response to leading questions by defendant's counsel.

The cases cited by defendant in support of his contention, to-wit, Borowski v. Biscuit Co., 229 S. W. 424, and Magill v. Bank, 232 S. W. 448, do not apply. In the case first named the ruling was against the receipt of

evidence by an expert witness to the effect that he had learned from the plaintiff the condition of her eyes prior to the injury, and he was allowed to testify to such condition as detailed by her. The evidence clearly was hearsay and was held to be reversible error.

In the Magill case, a witness was allowed to testify to the effect that in diagnosing the case he took into consideration what the plaintiff had told him of her prior condition and he was permitted to relate the conversation. Clearly such testimony was hearsay. The difference between the testimony of which complaint is made in the case at bar and the two cases cited is so apparent that no further comment is necessary.

On reconsideration of this and all other points in defendant's motion for rehearing, the said motion is hereby overruled.

All the judges concur.