C. E. JONES, RESPONDENT, v. MISSOURI FREIGHT TRANSIT CORPORATION, APPELLANT.—40 S. W. (2d) 465.

Kansas City Court of Appeals. June 15, 1931.

*Paul R. Byrum* and *Ira B. McLaughlin* for respondent.

*Ingraham D. Hook, Carl E. Enggas* and *Paul C. Sprinkle* for appellant.

ARNOLD, J.—This is a suit for personal injury and property damage which arose out of a collision on December 31, 1928, between a Ford roadster driven by plaintiff and a truck belonging to defendant which was standing on a public highway.

The facts shown are that defendant is a corporation organized and existing according to law and engaged as a common carrier of freight, operating upon the public highways of the State. Prior to the occurrence giving rise to this action the Hon. Harry H. Terte was appointed receiver of defendant corporation, in charge of all the property and business thereof. Permission was given by the appointing court to sue said receiver, as such, and hence the receiver is made a party defendant herein, but before the trial, the cause was dismissed as to him. Plaintiff is a resident of Kansas City, Missouri.

The accident complained of occurred one and a half to two miles north of Rich Hill in Bates county, Missouri, on highway No. 71, at which point the highway runs north and south and is paved by a cement slab eighteen feet in width, with a black marker in the center thereof, thus making two nine-foot slabs as the component divisions of the paved part of the highway. There was also constructed a dirt shoulder about six feet in width on each side of the slab, making the roadway thirty feet in width, including the slab and shoulders.

The truck belonging to defendant was of three-ton capacity with a box body thereon seven and one-half feet in width, outside measurement, the upper surface thereof being about nine or ten feet above the surface of the pavement. The end of the box body was approximately square. The truck was equipped with marker lights on each corner, both front and rear, two head lights in front and tail light in the rear. The truck was returning from Joplin, Mo., to Kansas City, being driven by one Cole who was alone. On arriving at Rich Hill, Cole first discovered trouble had developed in the motor and when he reached a point about a mile and a half or two miles north of that town, the motor stopped. On examination Cole found the trouble to be the leakage of water through the jacket into the motor, making it impossible for the motor to run. Cole testified that when he discovered this condition he climbed back into his seat, and by means of the starter, pulled the truck over to within four inches of the east edge of the slab, but not onto the shoulder, where it stopped, or was stopped, being then headed north. Cole further testified the shoulder on the east side of the slab was muddy and soft and that it was not possible to pull the truck off the slab by means of the starter.

The testimony shows the pavement at the point of the collision was slightly down grade toward the north, though there is some testimony to the effect that the pavement there was practically

level. Cole testified the truck stopped of itself when the motor died and that he did not stop it; that when he left to go to a telephone, the lights were on. The testimony shows Cole was gone for quite awhile and before his return plaintiff, driving a Ford roadster, practically new, ran into the rear of the truck, injuring himself and damaging his car. The collision occurred in the afternoon during a snow storm which began about one or two o'clock P. M. The evidence shows the snow was heavy and wet, and a good strong breeze was blowing from the northwest which, at intervals, would drive the snow and thus partially obscure the view of persons on the highway; that in some places the snow would melt where it fell and in others the pavement would be covered with wet, mushy, slushy snow; at times the precipitation was very heavy and the visibility low; the atmospheric condition was variously described as foggy, misty, hazy and at times dusk-like, and dusk. Plaintiff testified he had been quail hunting and was on his way home to Kansas City, traveling north; that he had his headlights on; that due to the falling snow he was compelled to use his hand squegee on his windshield; that he was driving at a speed of twenty to twenty-five miles per hour; could see only fifty to sixty feet ahead, due to the snow; it was not sundown and not dark, but dusk; that when he first saw the truck he thought it was moving and did not realize it was standing still; that he applied his brakes; his car did not skid; he struck the rear of the truck to its left side; in approaching the truck he saw a car coming from the north; that he slowed down, turned his car to the left in an attempt to go between the truck and the oncoming car. There was no impact with the southbound car.

The testimony shows the truck was stopped—or did stop—on the east half of the slab and no part of it was on the shoulder. It thus occupied all of the east half of the slab except one and one-half feet. In this situation cars passing both north and south were required to use the west side of the slab. There is no dispute as to this situation. Some of the passing cars had their headlights burning, others had not.

Plaintiff testified that when he got within about thirty feet of the truck, he realized it was not moving, and that he would not be able to pass the truck on its left and at the same time miss the oncoming automobile from the north; that he saw a man standing on the right of the truck and a small truck in the ditch, or cornfield, on that side; that he immediately applied his brakes but was unable to avoid the collision. The center of plaintiff's radiator struck the left rear portion of the truck; that he could not judge how fast he was going at the time of the impact. Plaintiff was rendered unconscious, was assisted from the car, and when he regained consciousness he ascertained the license number of the truck

and its owner. He then was taken by a passer-by to a hospital in Rich Hill and there received first aid. Later he came to his home in Kansas City by train.

The amended petition formally alleges the corporate status of defendant corporation, the appointment of defendant Terte as its receiver; that highway No. 71 is a public highway in the State of Missouri, consisting of a concrete slab eighteen feet in width, the date of the accident as of December 31, 1928, and ''that prior to said time the defendants had negligently stopped one of their large freight trucks near the center of said slab and caused and permitted said truck to stand on said slab without any lights thereon and with no warning signals of any kind thereon or thereabout; that the right wheels of said truck were three or four feet west of the east edge of said slab, and the left wheels standing about three feet west of the center line of said slab; that the sky was heavily clouded; that it was dusk and the air was filled with snow flakes and that visibility was very poor by reason of the increasing darkness and the air being filled with snow; that plaintiff did not see said truck; that the said automobile came into violent collision with the rear end of said truck, as a result of which plaintiff's automobile was wrecked and plaintiff received the following severe, permanent and lasting injuries.''

Then follows a list of injuries alleged to have been sustained by plaintiff and the petition then states—''that prior to receiving said injuries he was a strong able-bodied man; that since receiving said injuries he has been and will be sick, weak, nervous, unable to work and confined to his home in bed; that his neck, shoulders, back, right side, hips, right leg and right knee have been and will be sore, weak, stiff, painful and limited in motion and utility; that by reason of the injuries to his right knee he will be a permanent cripple and will be obliged to undergo dangerous and painful operations to his said knee; that he has lost his natural rest and sleep; that he has suffered and will continue to suffer great physical pain and mental anguish; that by reason of said injuries he has become obligated for the payment of a hospital bill in the reasonable sum of $175, and has become obligated for medical and surgical attention and medicines in the reasonable sum of $250, and will in the future become obligated for medical and surgical and hospital bills and medicines in sums which plaintiff cannot state at this time; that all of the aforesaid injuries and injurious consequences are permanent, progressive and lasting.''

The petition alleges plaintiff was the owner of a 1928 Ford roadster of the value of $500, and enumerates the specific elements of damage thereto. The negligence charge is as follows:

''Plaintiff states that all the aforesaid injuries and injurious consequences to plaintiff and damages to his said automobile were

directly caused by the negligence of the defendants in this, to-wit: that they negligently caused and permitted said truck to remain stationary on said slab at said point on said highway in a position with the left wheels extending west of the center line of said slab and causing an obstruction to traffic on said highway and endangering plaintiff and other persons traveling said highway; that it negligently failed to remove said truck from said slab and place said truck out of the way of traffic on said highway where it would not endanger plaintiff and other persons traveling on said highway; that they negligently failed to place red flags, station a guard or take other precautions to warn plaintiff or other persons traveling said highway of the presence of said truck in the line of traffic and obstructing travel over said highway; that they negligently failed to place said truck with its right side as near the right hand side of highway as practicable in direct violation of the Laws of Missouri, 1921, First Extra Session, page 93; that they negligently failed to cause a signal lamp to be lighted at the rear of said truck, although darkness and snow in the air caused the atmospheric condition to be such as to render said truck standing on highway dangerous to travel on said highway, in violation of Laws of Missouri, 1921, First Extra Session, page 95.''

Judgment is asked in the sum of $175, hospital bill, $250 for medical and surgical bills, $500 damage to plaintiff's automobile, and $14.075 for injuries, pain, suffering and mental anguish, all in the total sum of $15,000.

The amended answer contains a general denial and for affirmative defense pleads contributory negligence, in that at said time and place, plaintiff drove his automobile at a high, dangerous and reckless rate of speed, without keeping a lookout for vehicles ahead; that he saw, or by the exercise of ordinary care on his part, could have seen defendant's truck in time, by the exercise of the highest degree of care on his part, to have stopped, swerved, or turned aside; yet plaintiff carelessly and negligently failed so to do and drove his automobile against defendant's truck, thereby causing the injuries of which he complains; that plaintiff negligently and carelessly attempted to drive between the truck of defendant and an automobile traveling in the opposite direction at said time and place.

The cause was tried to a jury. resulting in a verdict and judgment for plaintiff in the sum of $5,500. Motions for new trial and in arrest of judgment were overruled and defendant appeals.

While the motion for a new trial urges twenty-nine reasons why it should be sustained, these are embodied in eight assignments of error in support of this appeal, the first being the court erred in permitting inquiry upon the *voir dire* concerning certain insurance agents. It is urged the rule is well settled if there is an insurance company engaged in defense of a lawsuit, notwithstanding the

amount sued for may not be fully covered by insurance, upon *voir dire* examination questions may be asked of the panel concerning any relationship which any member thereof may have with the insurance company. There is no question but this observation correctly states the rule. It is charged, however, that while the record in this respect was made out of the hearing of the jury, as to the fact that an insurance company was engaged in defending the suit, plaintiff's attorneys went much farther than necessary in their inquiry and asked concerning the relationship of any member of the panel with men named Sam E. Busler, H. P. Howard, a salesman for the insurance company involved, and N. E. Ladish who, it was contended, had his office with Busler. It is argued there must be a showing of good faith on the part of plaintiff and that diligence would seem to be one of the elements of good faith; that none of the men inquired about was in the court room, none had any interest in the outcome of the case nor would be compelled to pay in the event of a verdict for plaintiff; that the only basis for asking about these men was that plaintiff's counsel stated he had understood they had acted as brokers in an insurance policy for appellant, although the record shows plaintiff's counsel were confused about the company they thought was defending the case; the fact that this confusion existed and that the record fails to show these individuals had anything to do with this suit, or interest in its outcome, afforded sufficient reason for the court to have refused to permit such inquiry; that since there was no foundation for the inquiry, either in law or in fact, the trial court was in error in permitting the questions to be asked. The facts of record are that in the court's chambers, out of hearing of the jury, plaintiff's counsel laid what they termed a foundation for the inquiry upon what seemed to be reliable sources, to the effect that:

"(1) The risk was covered by a policy held by defendant in the United States Fidelity & Guaranty Company of Baltimore, Maryland.

"(2) Defendant originally purchased said insurance policy through Sam E. Busler & Company.

"(3) Sam E. Busler & Company brokered the same through Thomas McGee & Sons, insurance agents and brokers."

Defendant's counsel thereupon stated plaintiff's information was not correct and that: (1) An insurance company known as the Western Companies, having an office on the ninth floor of the Federal Reserve Bank Building, was defending the case and had employed counsel appearing for defendant. (2) That the Kansas City manager for said company was C. R. Fidlar. (3) That counsel did not know whether or not defendant's policy covering the casualty in question was "brokered" through Sam E. Busler & Company. The court then permitted plaintiff's counsel to ask the jury collectively the following questions:

"(1) If any of them were acquainted with Sam E. Busler & Company, insurance dealers, in the Land. Bank Building; with H. P. Howard, a salesman for that company and N. E. Ladish whose office is in the same suite with the Busler Company; if they have any relatives or close friends employed by that organization; if they have ever had any business dealings with that organization, or any of their close friends ever had any business dealings with that organization.

"(2) If they ever had any business dealings with the Western Insurance Companies; if they had any policies in any of these companies; have had any business dealings with any of the companies or have any relatives or close friends employed by any of the companies. C. R. Fidlar's name was mentioned as being the representative of these companies and the location of the Kansas City office of the companies stated."

We fail to see in the foregoing any evidence from which might be inferred a lack of good faith on the part of plaintiff's counsel, especially in view of the statement of defendant's counsel that he did not know whether defendant's policy was "brokered" through Sam E. Busler & Co. Good faith in this respect means an honest belief on the part of plaintiff that defendant is insured; and plaintiff is entitled to know whether prospective jurors have any connection with the insurance company, its agents, representatives, managers and stockholders. This rule is so well established as to be beyond question. [Jablonowsky v. Cap. Mfg. Co., 312 Mo. 173, 279 S. W. 89; Wagner v. Gilsonite Const. Co. (Mo.), 220 S. W. 890, 897, 898; Willis v. Quarries Co., 218 Mo. App. 698, 268 S. W. 102, 106; Duncan v. Ice Co., 25 S. W. (2d) 536.] The question of good faith is discussed in Cazell v. Schofield, 319 Mo. 1169, 8 S. W. (2d) 580; Galber v. Grossberg, 25 S. W. (2d) 96, 98. There was no error in the respect charged and the point is ruled against defendant.

It is also charged the court erred in refusing to discharge the jury, on motion of defendant, when witness T. G. Maloney, on examination, referred to the fact that a man took a statement from him, saying he represented an insurance company: As to this incident the facts are that witness Maloney who lived at Rich Hill was subpoenaed by defendant, but upon reaching Kansas City he was subpoenaed and placed on the witness stand by plaintiff. He was asked in regard to a statement in writing made by him, introduced in evidence: "Who was down there from the other side?" His answer was, "Why, a man by the name of Morgan who was taking statements for an insurance company, I understood him to say." Later an objection was made to the answer, but the court refused to discharge the jury on motion of defendant. It is insisted the court erred in this refusal because the direct

question by plaintiff's attorney could not have been asked in good faith, in that the man Morgan did not testify, and it was not shown he had any connection with the insurance company defending the suit, and because the testimony did not tend to prove or disprove any issue in the case. The record discloses no objection was made to the question at the time. The motion to discharge the jury came some minutes later, was overruled, and the court of its own motion instructed the jury to disregard that part of the witness's answer volunteered. No exception was saved to this last ruling of the court. It must be held plaintiff had a right to inquire into all the facts connnected with the procurement of the statement referred to. [Bobos v. Packing Co., 19 S. W. (2d) 630.] An examination of the question and Maloney's answer shows the question was fully answered by the witness's statement: "Why a man by the name of Morgan." The rest of the answer was volunteered by the witness. It was not responsive, but we fail to see how it could have been anticipated by plaintiff's counsel, unless he knew all the methods of insurer's employees who had worked on the case. We can see no evidence of bad faith in the matter. Moreover, the jury already know from the examination on voir dire that an insurance company was interested. The witness' answer gave them nothing new, and we must hold defendant's position in this respect untenable and its cause not prejudiced thereby. [Simmer v. Stores (Mo. App.), 282 S. W. 117; Edwards v. Smith (Mo. App.), 286 S. W. 428; Warner v. Glass Co., 319 Mo. 1196, 8 S. W. (2d) 846.] We rule this point against defendant.

Defendant vigorously attacks plaintiff's instruction P-1. This instruction is rather long and we do not deem it necessary to set it out here. Defendant's analysis of the petition is as follows:

"Respondent's petition upon which this case was tried charges five distinct acts of negligence on the part of appellant; the first is that the appellant was negligent, in that the truck was caused and permitted to remain stationary upon the highway so that the left wheels extended west of the center line of the slab, thereby causing an obstruction to traffic. Next, that the appellant was negligent in failing to remove said truck from the slab. Third, that the appellant negligently failed to place a red flag or station a guard or to take other precautions to warn the respondent of the presence of the truck. Fourth, that the appellant negligently failed to place the truck as near the right hand side of the highway as practicable, and, last, that the appellant was negligent in failing to have a signal lamp lighted on the rear of said truck, although atmospheric conditions would call for such a signal."

In analyzing the instruction and charging error therein, defendant insists it charges a general duty on the part of the employe to control and manage the movements of the truck; charges the em-

ployee stopped said truck and permitted it to remain stationary on the slab; required the jury to find the truck obstructed north-bound traffic and that it was not lighted; required a general finding that employe failed to exercise ordinary care to warn persons of the presence of the truck, and required the jury to find whether the aforesaid acts constituted negligence under all the conditions then and there existing, as shown by the evidence.

In considering the points enumerated, it is well to apply the allegations in the petition to the requirements at the hands of the jury in the instruction. The amended petition alleges (1) defendant owed to persons traveling on the highway the duty to exercise due care for their safety in the operation of the truck; (2) that defendant's servant while in the scope of his employment, violated that duty; (3) injury and damage to plaintiff resulted; (4) that such injury and damage was due to the violation of said duty through negligence. The sufficiency of the petition to state a cause of action has not been challenged, and we need refer to its contents no further than to consider defendant's objections to plaintiff's instructions.

Defendant's analysis of the evidence is to the effect that it was daylight when the collision occurred; the estimates varied as to the distance the truck could be seen ahead, ranging from 50 to 700 or 800 feet; the evidence was conflicting as to whether the truck was lighted. The driver testified there were seven lights on the truck, while plaintiff said there were no lights on it. Other witnesses testified they only saw the lights after they had been about the truck for sometime. Only one witness (plaintiff) testified the truck extended to the left of the center of the slab; all the others placed the truck on the east half of the slab. The driver of the truck was the only witness who testified as to how the truck came to be on the slab; such testimony has already been stated to the effect the motor broke down and the driver moved the truck as far as he did by operation of the starter; that he could not move it off the slab onto the shoulder because the shoulder was wet and muddy. Defendant argues there is no testimony in the case that the driver stopped the truck upon the highway; that it is shown it stopped because of engine trouble, and states:

"Had the truck been voluntarily stopped upon the highway by the employee, there would be a different situation concerning liability. as voluntarily stopping a truck under those conditions and leaving it there unattended would be negligence without excuse."

Therefore it is insisted the instruction assumes the driver stopped the truck on the highway, which was not proved, and the burden was on plaintiff to prove the driver stopped the truck.

We are not prepared to follow defendant to the extent indicated by its analysis of the situation. Of course it is not within our

province to pass upon the weight of the evidence, but only to examine it to determine if there is any substantial evidence on the point in question to take the case to the jury. From the very nature of the situation the driver of the truck was the only possible witness who could testify as to whether he stopped the truck, or whether it stopped of its own inability to operate. The testimony of the driver on this point is as follows:

"A. . . . When I seen it was stopped I pulled over to the right hand edge of the pavement and got out to see how close I was over and scraped the snow off and got in and pulled it over with the starter as far as I could. . . .

"Q. After you had pulled the motor over to the edge of the pavement, then what did you do? A. Well, I got out to see if there was any way I could fix it or see what was the matter with the truck.

"Q. What did you find? A. I found that I wouldn't be able to start it. I would have to be towed in.

"Q. Then what did you do? A. Pulled—got back in and pulled the truck back on the pavement.

"Q. Did what? A. Got back in and pulled the truck back on the pavement after getting out. That is when I pulled it over with the starter. . . .

"Q. How far did you pull it with the battery and starter? A. Oh, I would say not over eight or ten feet.

"Q. That was as far as you could go with it? A. That was as far as was necessary to get it over to that side of the pavement.

"Q. When you stopped your truck there then you were on the right hand side of the slab; that is, the east side?"

The witness further testified:

"Q. Could you have pulled the truck off on the shoulder by the use of the starter? A. No, sir.

"Q. Why? A. Well, the soil there was muddy. The snow was melting to some extent and the ground was too soft. The starter wouldn't pull only on the level.

"Q. What would happen if you pulled out on the edge of the road with the starter? A. Well, it would sink down and stay there."

There was testimony showing the pavement where the truck stood was slightly down grade, though the driver stated it was practically level. He admitted he did not even try to push the truck.

Counsel for parties argue in detail the point as to whether the truck was stopped by the driver, or whether it stopped because the engine refused to operate further. We think we may not indulge in these hair-splitting distinctions. The testimony shows beyond

question the truck was on the east half of the pavement. The petition alleges:

". . . defendants had negligently stopped one of their large freight trucks near the center of said slab and caused and permitted said truck to stand on said slab . . ."

Plaintiff argues, and we think properly, that when the driver ceased to pull the truck any further with the starter, having, as he stated, pulled it "as far as was necessary," he stopped it. We think the testimony on this point is such the jury might well conclude the driver stopped the truck where it stood until the accident occurred. The instruction was not erroneous in the respect charged.

Defendant declares the instruction is erroneous because it gave the jury a roving commission to find negligence generally, under all the facts "and circumstances as shown by the evidence;" that it told the jury if they found the truck was not lighted at the place it was upon the slab and that the employee failed to warn persons of its presence, then the jury was entitled to bring in a verdict for plaintiff if such acts were the direct cause of the collision. There is no dispute as to the duty of defendant's employee under the conditions shown in evidence, in respect to having warning lights on the front and rear of the truck when same was left on the highway. [Stewart v. Jeffries (Mo. App.), 34 S. W. (2d) 560.] As to whether or not there were warning lights on the truck was a disputed question which was properly submitted to the jury. The instruction requires the jury to find the specific facts mentioned therein and as alleged in the petition. They were not required to find the facts separately, but in the conjunctive. There was no error in the instruction in this respect. [Olney v. Pub. Service Co. (Mo. App.), 19 S. W. (2d) 534, 539; State ex rel. v. Ellison, 272 Mo. 571, 581, 199 S. W. 984, 987.] A roving commission to find negligence is sometimes error but where, in a case of this kind where all the essential facts are submitted, the jury is limited to "all the conditions then and there existing as shown by the evidence," there is no roving commission. [Brickell v. Fleming, 281 S. W. 951; Mueller v. Holekamp, 260 S. W. 118; Olney v. Pub. Service Co., supra.]

It is also insisted plaintiff's instruction P-1 is too broad in that it tells the jury if they find the driver failed to exercise ordinary care to warn persons traveling on the highway of the presence of the truck, and if the jury further find that such failure, under all the circumstances in evidence, constitutes negligence, then they might charge defendant with negligence. The objection is the instruction thus permitted the jury to find that if no warning was given, and the jury found there was negligence, under the circumstances in evidence, then it could return a verdict for plaintiff. This objection cannot be sustained. The same point is discussed and deter-

mined against defendant's contention in Toeneboehm v. Railway, 317 Mo. 1096, 298 S. W. 795. The instruction required the jury to find what the duty was in that respect. It was one of the elements of negligence alleged in the petition and hypothesized in the instruction. There was no error in this respect. From what we have already said, we must hold instruction P-1 is not erroneous in any of the respects charged.

It is charged instruction P-6 is erroneous; that it is misleading in that it permits a finding for plaintiff if there is a slight preponderance of evidence in plaintiff's favor, no matter whether the evidence is credible or not. The instruction is as follows:

"The court instructs the jury that, while the plaintiff is required by the law to prove the case by the greater weight or preponderance of the evidence, the question as to where the greater weight or preponderance of the evidence lies is to be determined by the jury upon a fair and impartial consideration of all the facts and circumstances in evidence in this case.

"The court further instructs you in this connection that, if you find from the evidence that the evidence in this case preponderates in plaintiff's favor, although but slightly, such is sufficient to entitle him to a verdict."

Such an instruction was approved in the case of Thurman v. Wells, 251 S. W. 75, 77, where the same objection was urged against it as here. In that case the objection was leveled against the words "although but slightly," referring to preponderance of the evidence. This court held in Zackwik v. Insurance Co., 225 S. W. 135, 139:

"It (the instruction) defines 'preponderance of the evidence' as 'not the greater number of witnesses, but that evidence which is more satisfying and convincing' to the minds of the jury. It is contended that the definition is defective, in that the words 'in respect to its credibility' were not added. We think the jury would understand the definition given to be the same as if those words were added."

Defendant's instruction D-7, defines what is meant by "preponderance of the evidence" as follows: ". . . that is, the greater weight of the credible evidence to the satisfaction of the jury . . ." We think the jury would understand the meaning of the instruction and in the light of defendant's instruction there was no error in the respect charged. Defendant's citations do not change the rule just announced.

A charge of error is also lodged against plaintiff's instruction No. 7, which reads:

"With reference to the defense of contributory negligence, the court instructs the jury that the burden is not upon the plaintiff to establish that at the time of the casualty mentioned in evidence he

was not guilty of contributory negligence, but on the other hand, the burden is upon the party asserting that he was at the time guilty of contributory negligence to establish such fact to your reasonable satisfaction.

"Negligence, if any, on the part of plaintiff, such as will bar his recovery in this case, on the ground that he was guilty of contributory negligence, must be such negligence as to enter into and form a direct, producing and efficient contributory cause of the casualty, and absent which the casualty would not have happened."

It is urged the instruction is erroneous in that it states defendant must prove contributory negligence to the satisfaction of the jury; that there is no duty upon defendant to prove contributory negligence to any other degree than by a preponderance of the credible evidence. It is argued that to require proof of that fact to the satisfaction of the jury offers no guide as to what degree of proof is required on the part of defendant. In addition to the error just charged, it is urged the instruction tells the jury that before contributory negligence is established, the proof must indicate plaintiff's evidence was such that, had there not been negligence on plaintiff's part, the collision would not have occurred.

This argument must be held unsound. P-7 is a correct instruction on the subject. It properly restricts plaintiff's right of recovery in that it impliedly tells the jury plaintiff may not recover if the proof shows he was guilty of contributory negligence which must be of such nature "as to enter into and form a direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened." This is a proper declaration of the law. There was no error in this respect. [Howard v. Scarritt Estate, 267 Mo. 398, 184 S. W. 1144; Hires v. Grocer Co. (Mo.), 296 S. W. 408.]

A further charge of error against instruction P-7 is that it stated "the burden is upon the party asserting that he (plaintiff) was at the time guilty of contributory negligence to establish such fact to your reasonable satisfaction." It is insisted this is not a correct declaration of the law. We find the law as declared by the appellate courts is against defendant on this point. [Nomath Hotel Co. v. Gas Company, 300 Mo. 240, 253 S. W. 975, 981; Pohlman v. Wayland, 226 S. W. 92, 93; Muehlbach v. Muehlbach Brewing Co., 242 S. W. 174, 179; Malone v. Franke, 274 S. W. 369, 371.]

Defendant insists the court erred in giving its instruction D-4, as modified by the court. In considering this assignment, it must be noted defendant's answer pleads:

". . . Any injuries of which the plaintiff complains were solely and directly due to the carelessness and negligence of the plaintiff, in that . . ."

It has been held this is a specific plea that plaintiff's negligence

was the sole cause of the casualty, such as might have been shown under a general denial; that it is not a charge of contributory negligence, but that plaintiff's own negligence was the sole cause of the happening. [O'Donnell v. Railroad (Mo.), 26 S. W. (2d) 929, 934-5; Causey v. Wittig (Mo.), 11 S. W. (2d) 11, 14, 15.] The instruction as given is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff saw, or by the exercise of the highest degree of care could have seen that the automobile truck of the defendant was stationary upon the highway, in time to have stopped, swerved or turned aside, and thereby avoided the collision with defendants' automobile truck, but that the plaintiff carelessly and negligently failed so to do, if you so find, and that as a direct result thereof, he ran into and against the automobile truck of the defendants, thereby injuring himself, if you so find, then you are instructed that your verdict shall be for the defendants."

The instruction, as offered, did not contain the clause that the truck was stationary upon the highway. After the insertion of that clause the instruction was more favorable to defendant than it was entitled to. The instruction, as offered, was improper as it authorized the jury to find against plaintiff if he saw or could have seen the truck whether he was mistaken about its being stationary, although he was looking attentively where he was going. As offered, the instruction authorized the jury to find against the plaintiff if he innocently thought the truck was moving forward or out of his way.

Another charge is the court erred in modifying defendant's instruction D-7, and giving the same as modified. As offered, this instruction was as follows:

"The charge laid by plaintiff against the defendants is one of negligence. Negligence is a positive wrong, and therefore in this case is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance; that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendants to disprove the charge, but rather, the law casts the burden of proof in this respect upon the plaintiff, and such charge of negligence must be sustained by the preponderance; that is, the greater weight of the credible evidence to the satisfaction of the jury, as above stated. If, therefore, you find the evidence touching the charge of negligence against defendant to be evenly balanced, or the truth as to the charge of negligence against defendant remain in doubt in your minds, after fairly considering the evidence, your verdict must be for the defendants."

The court struck out the words "the truth as to the charge of negligence against defendants remain in doubt in your minds." Appellant cites Denkman v. Fixture Co. (Mo.), 289 S. W. 591, in support of its contention the court was in error in thus modifying the instruction. An examination of that case shows it is not authority for defendant's contention. As we understand the objection, it is that the jury were told it was plaintiff's duty to prove the charge of negligence by a preponderance of the credible evidence, to their reasonable satisfaction, and that it was error not to charge again the same thing in the same instruction by stating the converse. This position is not sound. The point was considered by this court in Vanausdol v. Bank, 5 S. W. (2d) 109, 119, and was determined against defendant's contention. [See also Markowitz v. Markowitz, 290 S. W. 119, 123; Long v. Martin, 152 Mo. 668, 54 S. W. 473.] This point is ruled against defendant.

Some reference is made to the Laws of Missouri, 1921, First Extra Session, p. 93, as applied to the situation here presented. The act requires "all vehicles not in motion shall be placed with their right sides as near the right hand side of the highway as practicable . . ." This act was pleaded in the petition. The question as to whether the truck was so placed as to be in violation of the act was merely an element of negligence for the jury's consideration.

Finally, it is urged the court erred in refusing to discharge the jury upon defendant's objection to the closing argument of plaintiff's counsel. This charge is based upon the circumstance that plaintiff's counsel, in his closing argument, referred to defendant's truck and its position upon the highway as a "death trap." Objection was made and the court was asked to have the remark withdrawn and that the jury be discharged. The objection was overruled without any remarks thereon by the court, whereupon plaintiff's counsel said, "I will withdraw the statement." It is urged, and the record shows, plaintiff's counsel thereafter repeated the statement. The same objection was made and the same ruling by the court. Defendant cites Bradley v. City, 90 Mo. App. 416, 424, as authority for his argument that this was reversible error. That case does not support the contention. The same words were used in the argument as here, to-wit, "death trap." The court, however, corrected the attorney and said there was no evidence of that kind, and directed the attorney to keep within the record. On appeal it was held, in view of the action of the trial court, it was improbable the remarks referred to influenced the jury. It is true that counsel, in argument, are allowed much latitude. We cannot construe counsel's remark as more than an outburst of enthusiasm in his client's behalf. The jury found there was negligence in the position of the truck. The testimony shows the driver of a tobacco truck approaching from the south was compelled to run his vehicle into a ditch to avoid

1092

collision with defendant's truck. We think, under the evidence, the situation might be referred to as a death trap without prejudicial impropriety. [Stratton v. Baking Co., 237 S. W. 538, 541.] We see no palpable abuse of the properties in the situation here presented. [Bobso v. Packing Co. (Mo.), 19 S. W. (2d) 630, 633.] We fail to find reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.